# THE COLORADO LAW REPORTER.

VOL. I.]      DENVER, OCTOBER, 1880.      [NO. 2

## THE C. C. R. R. CO. *v.* CATHERINE HOLMES.

*(Supreme Court of Colorado, April Term, 1880.)*

NEGLIGENCE. The first requisite is to show the existence of the duty to be performed.

CONTRIBUTORY NEGLIGENCE is established when it is shown that the party injured, by exercise of ordinary care, might have avoided the consequence of defendant's negligence.

STONE, J. In treating upon the right of redress for injuries caused by the negligence of another, Mr. Cooley, in his recent work upon Torts, says, p. 659: "The first requisite in establishing negligence is, to show the existence of the duty which it is supposed has not been performed. A duty may be general and owing to everybody, or it may be particular and owing to a single person by reason of his peculiar position.    *    *    *    *    But a duty owing to everybody can never become the foundation of an action until some individual is placed in a position which gives him particular occasion to insist on its performance; it then becomes a duty to him personally. The general duty of a railway company to run its trains with care becomes a particular duty to no one until he is in position to have a right to complain of the neglect. The tramp who steals a ride cannot insist that it is a duty to him; neither can he when he makes a highway of the railway track and is injured by the train.    *    *    *    These are illustrations; but in every instance the complaining party must point out how the duty arose which is supposed to have been neglected. And this is the real reason why one cannot complain of all injuries to which his own negligence has contributed; when it appears but

7

for his own fault the injury would not have occurred, it also appears that the duty to protect him did not rest upon others; for no one is under obligation to protect another against the consequences of his own misconduct or neglect."

The general rule as to contributory negligence which seems to be established by the authorities is, that if the party injured, by the exercise of ordinary care under the circumstances, might have avoided the consequences of the defendant's negligence, but did not, the case is one of mutual fault, in which the law will neither cast all the consequences upon the defendant, nor will it attempt any apportionment thereof. This is the English rule and it has been accepted by the courts in this country with but few exceptions. Cooley on Torts, 674. The cases cited in support of this rule are very numerous, embracing many of the states in the Union, and the Supreme Court of the United States.

The later Illinois cases have departed from the rule to the extent of allowing a right of action to depend upon the relative degrees of negligence to be imputed to plaintiff and defendant respectively; that is to say, that a plaintiff whose concurrent negligence has contributed to the injury, may recover where the negligence of the defendant is gross, and in comparison to which that of the plaintiff is slight. *Ill. Cent. R. R.* v. *Hammer*, 85 Ill., 526. Kansas is perhaps the only other state that seems to follow the Illinois doctrine. *U. P. R. R.* v. *Rollins*, 5 Keins, 167; Cooley on Torts, p. 678.

That there is a difficulty in measuring in every case degrees of negligence in order to constitute legal definitions, even as they were divided by the Roman civil law into slight, ordinary and gross, is sufficiently obvious, and the attempt to fix and usefully apply these degrees in practice, has been criticized by the Supreme Court of the United States, (*Steamboat New World* v. *King*, 18 Horr, page 474,) but this difficulty falls little short of impossibility when it is sought to establish and measure relative degrees of the negligence of plaintiff and defendant involving acts of different parties, different circumstances, reviewing causes and effects from different stand points, and that perhaps in view of impending danger and with different means of avoidance, and all these complications of causes and effect, and comparison of unlike acts, and the negations of care which constitute different degrees of negligence, to be nicely measured, adjusted and ap-

portioned by a jury of totally different minds. The scale of justice can neither separate and weigh the atoms of care and negligence as ingredients of human conduct like a chemical analysis, nor determine their unknown quantities by algebraic equation.

The simplest rule applicable, deduced from the great mass of authorities, English and American, is stated quite clearly by Wightman, J., in *Taft* vs. *Watman*, 5 C. B., N. S., 582, in these words: "It appears to us that the proper way for the jury in this case, and indeed in all others of the like kind, is whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution, that for such negligence or want of ordinary care and caution on his part the misfortune would not have happened. In the first case the plaintiff would be entitled to recover, in the latter not; but for his own fault, the misfortune would not have happened; mere negligence or want of ordinary care and caution would not, however, disentitle him to recover, unless it were such that, but for that negligence or want of ordinary care and caution the misfortune could not have happened; nor, if the defendant might, by the exercise of care on his part, have avoided the consequences of the neglect or carelessness of the plaintiff.

The same rule, substantially, was adopted by our own court in the case of the *Western Union Telegraph Company* v. *Eyser*, 2 Col., 141. Such, too, is the doctrine of the Supreme Court of the United States. *Railroad Company* v. *Jones*, 5 Otto, 442.

Applying the rule to the case at bar, the questions to be determined are:

*First*—Was the injury occasioned entirely by the negligence or improper conduct of the defendant?

*Second*—Did the negligence or want of ordinary care and caution on the part of the plaintiff so far contribute to produce the injury, that otherwise the misfortune would not have happened?

*Third*—Might the defendant, by the exercise of care on the part of its servants, have avoided the consequences of neglect or carelessness of the plaintiff?

The evidence shows that the plaintiff, a laboring woman, about fifty years of age, living near the track of the defendant's railway

in the suburbs of Denver, started in the daytime to go to another part of the city to work. Her course lay along and across the line of the said railway. It was about the time of the arrival of a morning freight train. She knew the train came in at that hour. She had frequently been that way at the same time of day on previous occasions. She reached the track at a point whence she could see along it in the direction of approaching trains a distance of a quarter of a mile. She went upon the railway where there was no public crossing, and where there were several side tracks diverging and running parallel with and near the main track into the defendant's depot and train-yard. She turned her back upon the approaching train, and proceeded to walk along upon the railroad track. She heard the whistle, turned and saw the train coming; left the main track upon which she saw the engine approaching, crossed diagonally to the next track, and after going upon that a short distance, crossed to the third track and proceeded along it, walking on the ties. She presently heard shouts, looked around, and was struck by the forward car of a part of the train that had been switched off from the main track by a "running switch." She had walked three or four hundred feet on the tracks before being struck. At the place where she was struck there were four tracks of the railway, thirteen to seventeen feet apart, and within the defendant railway company's yard or switching ground.

At this point in the testimony we may pause to consider the first two questions above stated.

The act of the plaintiff going upon the railway track and deliberately using it for a foot path, at a time when she knew that engines and cars were likely to come in behind her; at a place where there was no road or street-crossing for public use; in the midst of a net work of tracks and switches; upon the defendant's private yard grounds, used for the purpose of running trains in and out, and switching cars on and off the various side tracks in depositing freight and making up trains in and about the depot; this act of the plaintiff, we say, was in itself gross and culpable negligence. It was obviously a want of ordinary care in the presence of impending and reasonably anticipated danger, and was, as the facts clearly show, such negligence as contributed directly to produce the resulting injury. *Illinois Central Railroad Company* v. *Hall,* 72 Ill., 222.

The first question, then, is disposed of; the injury was not caused by the negligence of the defendant alone.

Was the negligence of the plaintiff such as but for it the misfortune could not have happened? This question must be answered in the affirmative. She was without right in going upon any of the tracks at that time and place and walking upon them in the manner she did. That the accident could not have happened had she not so gone upon the track, is self-evident.

It follows that the only other state of facts under which the plaintiff is not disentitled to recover is in case the defendant might, by the exercise of care on his part, have avoided the consequences of the negligence of plaintiff.

The consequences of plaintiff's negligence placed her in a position of immediate danger in front of the moving cars by which she was struck, and the accident itself was the ultimate of such consequences. Could the defendants, by the exercise of care, have averted these consequences?

According to the testimony of all the witnesses to the point, the plaintiff, after leaving the main track, to get out of the way of the engine, and stepping onto the track upon which the freight cars were switched, was not over seventy-five feet from the forward cars of the train approaching her. There were two brakesmen on these cars, one of whom was on the cars in front. By them the plaintiff was seen to have apparently heeded the warning whistle, and to have left the first point of danger. She was then turning her course to one side; that is to say, she was walking diagonally along and across the track, as though intending to get off. She testifies herself that she was then trying to get off all the tracks. From her movement the brakeman had strong reasons for presuming that she would get out of the way before they reached her. She had reached the other side of the rail upon one side of the track, walking on the ends of the ties, so that when struck she was thrown off the track, falling under the side of the car toward town, in the direction she was going. When within fifteen or twenty feet of her, the brakeman on the forward car hallooed at her, and the brakes were put down; she heard the shouts, looked round and was immediately struck.

The testimony of railroad experts as to the distance within which the train could be stopped, is, that if moving at the rate of five miles an hour, it could be stopped in the train's length, a dis-

tance of from 450 to 600 feet; but if running from ten to twenty miles an hour, it could not be stopped short of a quarter or half a mile, there being in this case a slightly down grade.

The train was in fact stopped in less than 400 feet from the point where plaintiff was struck. It is quite evident that the train could not have been stopped between the time plaintiff got upon that track and the time she was struck. In other words, if the brakemen had seen her the instant she left the main track and walked over to and upon the side track, and they had immediately set the brakes within reach, the train could not have been stopped before reaching her; the intervening distance being less than one hundred feet, or about one-third the length of the train. At the rate of speed which the evidence fairly established, the train passed over about seven feet every second of time. It could not have been stopped in less than thirty seconds. The plaintiff had only three or four seconds to get out of the way when she heard the shout of the brakesman on the front car. One or two steps to one side would have placed her beyond reach of the passing cars. These steps could have been taken in as many seconds. As she had only to spring to one side to avoid the danger, it was barely possible for her to do so, if she was in a condition to act instantly, but the sense of impending danger often paralyzes for a moment, when that moment is fatal.

The evidence shows no wanton or wilful negligence or indifference in respect to the plaintiff on the part of the defendant. She was not "wantonly run down" by the cars.

For the view we take of the case, under the rule laid down touching contributory negligence, we have not considered the question of negligence on the part of the defendant that is raised respecting the making of the running or flying switch as affecting the case, since:

*First*—The testimony touching the character and practice of running switches at other places or on other roads, was wholly incompetent, and

*Second*—That such mode of switching was used by the defendant on this occasion; that it was not a departure from former usage in making switches at the point in question; that it was at a place where there was no street or other public crossing, and in the absence of any law or ordinance forbidding or regulating its

use, present such a state of facts as that it cannot be said to have been negligence *per se.*

Nor do we regard the evidence which was introduced on the part of the plaintiff, for the purpose of showing that other persons than the plaintiff had previously been in the habit of passing over and walking along the track at that place, and that even school children residing in the vicinity had used the track there for a foot path, sufficient to either lesson the degree of negligence on the part of the plaintiff, or interpose a greater burden of care upon the defendant.

In this case there is an absence of proof that such use of the track was known to the defendant. But even with such proof the facts are insufficient to establish a user by the public, or to show that at that time, or previously, there was either a thoroughfare across or along the track, or that there was a crowd or a considerable number of persons whose presence was to be anticipated and guarded against.

This is unlike the case of the *Kansas Pacific Railway* v. *Ward*, in 4th Colorado, cited by counsel for plaintiff, where during "Fair time" a crowd of pedestrians was constantly passing along the line of the railway to and from the fair ground; the railway company itself engaged in running excursion trains between the city and the fair, and where the injured person was struck by a projecting timber from a negligently loaded car, while he had approached the side of the track for the purpose of rescuing a child which he thought to be falling from one of the windows of a passing excursion train.

In view of the gross and culpable negligence of the plaintiff in going upon the track at that place, and walking along as she did, and the failure to show such want of care on the part of the defendant as that it might have avoided the accident notwithstanding the negligence of plaintiff, as the evidence is presented by the record, there can be no recovery, and the verdict was clearly against the evidence, and against the instructions of the court upon the rule we have chiefly discussed.

The court below correctly instructed that the negligence of the plaintiff was in itself culpable, and that she could not recover unless the defendant wantonly caused the injury when it might by proper care have avoided it.

As a rule the existence of negligence is a question of fact for the jury; but it is otherwise when the facts are not in dispute, or where the negligence or its absence is evident and unquestionable.

In such case the court may declare the fact established as a matter of law, settled by repeated decisions of the courts, acquire the force and effect of legal propositions, and are to be so declared by the court. Cooley on Torts, 670; Shear. & Red. on Neg., Sec. 11; *Pittsburg R. R. Co.* v. *McClerg*, 56 Pa. St., 294; *Pittsburg R. R. Co.* v. *Andrews*, 39 Md., 319; *I. & C. R. Co.* v. *Rutherford*, 29 Ind., 82; *Todd* v. *Old Colony R. R.*, 4 Allen, 18.

The judgment is reversed and the cause remanded.    *Reversed.*