3. Bound to utmost diligence.

---

## St. L., I. M. & S. Ry. v. Rice.

1.  PRACTICE IN SUPREME COURT: *Finding of jury.*
    It is the settled policy of this court to uphold the verdicts of juries, where they have passed upon disputed matters of fact, *provided* the evidence be legally sufficient to support their findings. Of this it is the province of the court to judge.

2.  CONTRIBUTORY NEGLIGENCE: *Proximate cause of injury.*
    In order to defeat a right of action on the ground of contributory negligence, it must appear that but for the plaintiff's negligence, operating as an efficient cause of the injury complained of, in connection with the fault of the defendant, the injury would not have happened.

| | |
|---|---|
| 51 | 467 |
| 56 | 211 |
| 51 | 467 |
| 58 | 79 |
| 51 | 467 |
| 63 | 487 |
| 51 | 467 |
| f67 | 305 |
| f67 | 306 |
| 51 | 467 |
| 74 | 18 |
| 74 | 22 |
| 74 | 480 |
| 51 | 467 |
| f79 | 81 |
| f79 | 440 |
| 79 | 622 |
| 82 | 337 |
| 82 | 375 |
| 51 | 437 |
| 85 | 463 |
| 51 | 467 |
| 188 | 187 |
| 88 | 296 |
| 51 | 467 |
| 90 | 227 |
| f90 | 331 |

3. SAME: *Same.*

The plaintiff sued the railway company to recover for an injury to his hand, sustained while in the employ of the defendant as yard foreman. He had been in the employ of railroads as brakeman and yard foreman for twelve years prior to the date of the injury, and coupling cars was one of his duties. The published rules of the company, of which he had a copy, enjoined the observance of "great care" "in coupling and uncoupling cars," and forbade an attempt to make a coupling unless the draw-bars and other appliances were "known to be in good order." The rules did not require employes to couple cars having uneven draw-heads, with straight links or when the draw-heads were defective. In making couplings it is customary and considered safer to do so with the link in the moving car. The weight of a draw-head is about two hundred pounds. The plaintiff went between a standing and a moving car to couple them. He saw that there was a link in the draw-head of each car. He tried to take the link from the standing car, but found it fast. He saw that the draw-head of that car was one and a half or two inches lower than it should have been and was twisted to one side. While the ordinary play of a link is from six to seven inches, the plaintiff saw that the link in the standing car had no play and that he could not couple with it without raising it up by extra force. He then took the link out of the approaching car and seizing the link in the standing car—which was a straight one—tried to raise it up and his hand was caught and injured. *Held:* That the plaintiff was guilty of gross negligence which contributed directly to produce the injury sustained, and he was not therefore entitled to recover.

4. MASTER AND SERVANT: *Duty of railway company to employe: Negligence.*

It is the duty of a railway company to furnish its employes safe appliances for performing the services intrusted to them, and to exercise care in maintaining such appliances in good repair. To this end the company should have its inspectors not only at its termini, but at convenient stations along its line. And where it knowingly employs and retains an incompetent inspector it will be liable for an injury resulting from his incompetency, although the person injured is the fellow-servant of such inspector. But the master is not an insurer of the servant's safety, nor does he guarantee that the tools, machinery and instrumentalities which he furnishes may not prove defective. He only undertakes to use reasonable care to prevent such results. [*St. L., I. M. & S. Ry. v. Gaines,* 46 Ark., 555.)

5. SAME: *Same: Burden of proof.*

Railway v. Rice.

In an action against a railway company for an injury received by an employe through defective appliances furnished for his work, the plaintiff must show by positive proof that such appliances were defective and that the company had notice of the defect, or was negligently ignorant of it.

6. SAME: *Negligence of fellow-servant.*

Where a yard inspector and yard foreman are not only employed at the same yard by the same railroad company, but their separate services have an immediate and common object—the moving of trains—and neither works under the order of the other, but both are subject to the control of the-same yard master, they are fellow-servants and the company is not liable to either for the negligence of the other in the performance of his service.

APPEAL from *Nevada* Circuit Court.

C. E. MITCHEL, Judge.

*Dodge & Johnson*, for appellant.

1. *Contributory negligence.*

By plaintiff's own confession he was guilty of such contributory and palpable negligence as to preclude a recovery. 5 McCrary, 471; 75 Ill., 108; 27 Minn., 141; 47 Miss., 420; 12 Metc., 415; 41 Miss., 131; 2 M. & W., 244; 1 Ad. & El., 36; 4 Beng., 142; 9 Hill, 522; 17 Fed. Rep., 882; 39 Id., 620; 74 Ind., 445.

2. *Disobedience of rules.*

Plaintiff, by violating the rules of the company known to him, or which he ought to have known, took the risk upon himself, and he cannot recover. 51 Miss., 641; 31 Mich., 430; 50 Wis., 66; 33 Ohio St., 227; 67 Mo., 239; 44 Ark., 293; 66 Me., 429; 74 Ill., 344; 98 Mass., 575; 46 Ark., 567; 44 Wis., 250; 92 Ill., 139; 76 N. Y., 125; 50 Iowa, 680; 20 Mich., 105; 5 Ohio St., 541; 45 Ark., 264; 46 Id., 78, 567.

3. *Fellow-servant.*

Even if the car inspector was negligent, it was the negligence of a fellow-servant for which the company is not liable.

46 Ark., 568.  This decision is sustained by the weight of authority, citing 2 A. & E. R. Cases, 142; 46 Mich., 258; 11 A. & E. Cas., 187; 77 Ala., 1882; 5 N. Y., 492; 98 N. Y., 211; 17 A. & E. R. Cases, 578; 129 Mass., 271; 124 Id., 114; 62 Tex., 597; 81 N. C., 446; 8 Atl. Rep., 594; 6 N. W. Rep., 485; 2 Thomp. Neg., 1034; 17 N. E. Rep., 216; 54 Wis., 264; 32 Md., 418; 49 Miss., 285; 85 Ill., 502; 78 Ind., 79.

The ruling in the Gaines case is supported by a majority of the State courts and text writers, and should not be disturbed.

*Scott & Jones*, for appellee.

1.  *Contributory negligence.*

Primarily it was the duty of defendant to have exercised ordinary care and prudence, to have furnished plaintiff with safe tools and instrumentalities with which to have performed the services intrusted to him, and to have exercised the same care and prudence in maintaining such tools and instrumentalities in good repair.

The State and Federal courts with singular unanimity have held this to be the master's duty to his servant. The servant has a right to presume the master has performed this duty and act upon this presumption. 48 Ark., 334. And it was the duty of plaintiff to exercise ordinary care and prudence in performing his services. The want of this, if the proximate cause of the injury, would bar a recovery. See 11 East., 60; Beach Cont. Neg., 8; 2 M. & W., 224; 68 Ill., 580. Review the evidence and contend that plaintiff came up to the full measure of his duty, and was neither reckless or imprudent, as he did not know of the defects until after the accident happened. The mere fact that he

Railway v. Rice.

knew of defects and uses them, does not necessarily charge him with negligence, or the assumption of the risks. The question is, ought he to have known such risks in the exercise of common sense and prudence? 33 N. W. Rep., 551; 32 Minn., 230; 34 Id., 45; 27 N. W. Rep., 662; 13 Pac. Rep., 491; 3 Col., 499.

2. *Proximate Cause.*

Want of ordinary care is no defence, unless such want of care on the part of plaintiff was the *proximate cause* of the injury. Beach Cont. Neg., 32; 85 Penn. St., 293; 8 A. & E. R. Cas., 130. This is a question of fact for the jury, under proper instructions. 75 Mo., 653; 24 Ohio St., 654; 4 Cal., 30; 11 A. & E. R. Cas., 421.

The burden was on defendant to show by preponderance of evidence that plaintiff was guilty of contributory negligence. 46 Ark., 182; Ib., 436; 48 Id., 475.

3. The plea of "*foreign cars*" will not avail. 30 Minn., 231; 56 Ind., 511; 7 S. W. Rep., 477.

4. As to "Disobedience of Rules," see 57 Miss., 641; 50 Wis., 66; 33 Ohio St., 227; 48 Ark., 348; 110 Mass., 240.

5. *Fellow-servants.*

Review the decision of this court in *R. R. v. Gaines,* 46 Ark., 568, and contend that it should be reviewed and overruled, as against the weight of authority and better reasoning. 55 Vt., 84; 45 Am. Rep., 591; 48 Ark., 345; 100 U. S., 213; 53 Iowa, 395; 55 Ill., 492; 12 Pac. Rep., 352; 29 Kan., 633; 33 Kan., 669; 65 Mo., 225; 78 Mo., 567; 7 S. W. Rep., 477; 26 Minn., 40; 14 Fed. Rep., *King v. O. Ry. Co.;* 116 U. S., 642; 80 N. Y., 46. The true test is the *character* of the act performed, and not the *rank* or *grade* of the person performing it.

6. When the servants of a common master are employed in *"different departments,"* the master is liable. 4 S. E. Rep., 211; 12 N. E. Rep., 225; 109 Penn. St., 296; 110 Mass., 240; 14 Am. Rep., 508.

SANDELS, J.

In attempting to couple cars on the yard of appellant, at Texarkana, the appellee's hand was seriously injured. He sued appellant for damages. Defendant denied negligence on its part and alleged that negligence on the part of plaintiff caused the injury.

The evidence disclosed the following facts: That Rice for twelve years prior to the date of injury had been in the employ of railroads as brakeman and yard foreman. Coupling cars was one of his duties. At the time of the injury he was night yard foreman and went to the yard about 5 o'clock p. m. The day yard foreman informed him that a car marked "1130 Way," was to go out to Texas next morning; this car had just come in. About 7:30 o'clock that evening, Rice got some cars from another track and proceeded to couple them to the car "1130 Way." He went between the standing and the approaching cars and noticed the position of the draw-heads of both; that of the standing car (1130) was one and a half or two inches lower than it should have been. He tried to take the link from the draw-head of the standing car, but found it fast. He then took the link from the draw-head of the approaching car. He says he saw that he could not enter the link into the draw-head of the approaching car with the play it had *without straining the link*. He thought that by using *a little extra force*, he could raise the link and make the coupling. The link used was a straight one. He

did not use a crooked link because he thought he could make
the coupling with the link fastened in the standing car.   The
weight of the draw-head is about two hundred pounds.   He
tried to lift up the link fastened in the depressed draw-head,
and his hand was caught and injured.   It is customary to
have link in moving car; it is considered safer.   The cause
of the depression of the draw-head of the standing car was
the depression of the carrying iron.   It is a common thing
to make couplings of cars of uneven draw-heads.   The rail-
road company issued to employes, and to plaintiff among
others, a time card with its rules and regulations printed on
the back.   Of these printed regulations, Rule 23 is as fol-
lows: "Great care must be used in coupling and uncoupling
cars.   Do not go between the cars unless they are moving
at a slow and safe speed.   Nor attempt to make any coup-
ling unless the draw-bars and other appliances are known
to be in good order."   That the published rules of the com-
pany do not require employes to make couplings between
cars where one draw-head is lower than another, with straight
links or when the draw-heads are defective.   It was the busi-
ness of the plaintiff, Rice, as yard foreman, to couple and
uncouple cars, make up outgoing trains, and to move cars
marked "B. O." (bad order) to the repair tracks.   As at
this yard the railroad company had a night and a day fore-
man, so it had its night and day inspector.   Plaintiff did
not know that the car "1130 Way" had been inspected,
but says:   *"I suppose this car was inspected; they al-
ways are."*   It was the duty of the yard inspector to in-
spect all cars immediately on arrival at the yard.   If he finds
a trifling defect it is his duty to repair it; if a serious one
he marks it "B. O.," and the yard foreman then moves the
injured car to the repair tracks.   He carries a wire upon

which nuts of all sizes are strung. The yard master had supervision and control of the whole yard and those employed therein. The distance between the point to which a coupling link may be raised and that to which it may be depressed is six or seven inches.

The court, among other instructions, gave to the jury the following: ''The jury are instructed that the duty which defendant owed to its employes, to exercise ordinary care and prudence in furnishing them safe appliances with which to perform the service intrusted to them, and to keep said appliances in good repair, as explained in the above instruction, cannot be delegated to an agent or servant of defendant so as to relieve defendant from responsibility. The defendant may not be able to perform this duty in person, but he must see that some one discharges it faithfully for him. He cannot shirk the responsibility. The law casts upon him certain duties to perform, and if he deputes them to another, the latter, as to these duties is not a fellow-servant with the other employes, but stands in the master's place, and his negligence is the negligence of the master. It is not material what the rank of the servant or agent is, if he is deputed to perform a duty which the employer owes to his employes, the employer is deemed to be present and is responsible for the manner in which it is performed. So in this case, if the jury find from the evidence that the plaintiff, while in the usual course of his employment as yard foreman, as is alleged in the complaint, and without negligence on his part, was injured while coupling cars on the defendant's road, or in the yards of the defendant in Texarkana, Ark., by reason of a defective drawhead or other defective appliances on one of such cars, and such injury was caused by the negligence of a servant of the defendant, whose duty it was to inspect said car and the

draw-heads attached thereto, and to mark such cars as defective or unsafe, and in certain instances to repair such defects, and the injury was caused by a defect in such car or its appliances which, under the rules and regulations of defendant, it was the duty of said servants to have repaired, then the jury are instructed that the negligence of such servants was the negligence of defendant, and their verdict may be for the plaintiff; unless they further find that such servant and plaintiff were at the *time* of such accident fellow-servants of defendant engaged in the same common employment, or that plaintiff was guilty of contributory negligence which was the proximate cause of the injury.''

The defendant asked the following instruction, which was refused: ''If the jury find from the evidence that the said car upon which the draw-head was, by which the plaintiff claims to have been injured, was inspected, or should have been inspected, at Texarkana before the plaintiff attempted to couple the same, and that through the negligence of said car inspector, the defects in the draw-head, if there were any, were not discovered, the court tells you that the plaintiff cannot recover for any neglect or carelessness on the part of the car inspector, either in not inspecting said car, or in failing to discover said defect, for the reason that said car inspector was plaintiff's fellow-servant, and you must find for the defendant.''     The jury returned a verdict for plaintiff for $6500.

The first ground for new trial presented by defendant, was that the verdict was contrary to law and the evidence.     In support of this it is urged that the undisputed facts show the plaintiff to have so contributed to the happening of the injury as to preclude his recovery in this action; upon the part of appellee it is argued that this question was fully and fairly submitted to the jury, upon proper instructions; and that

1. PRACTICE IN SUPREME COURT: Finding of jury.

where there is any evidence to sustain a verdict this court will not disturb it. It is the settled policy of this court to uphold the verdicts of juries, where they have passed upon disputed matters of fact, *provided* the evidence be legally sufficient to support their findings. Of this it is clearly the province of the court to judge, as decided in *Clark v. Hare*, 39 Ark., 258. The rule which precludes a plaintiff from recovery for an injury received on account of his own negligence, must be considered in determining the legal sufficiency of that evidence here to warrant the verdict.

2. CONTRIBU-TORY NEGLI-GENCE:

"Contributory negligence consists in such acts or omissions on the part of the plaintiff amounting to a want of ordinary care, as concurring or co-operating with the negligent acts of the defendant, are a proximate cause or occasion of the injury complained of." Beach on Contributory Negligence, sec. 7.

In *Mayor v. Baily*, 2 Denio, 433, Chancellor Walworth, in defining ordinary care, says: "The degree of care and foresight which it is necessary to use must always be in proportion to the nature and magnitude of the injury that will be likely to result from the occurrence which is to be anticipated and guarded against." And Beach on Contributory Negligence, sec. 9, says: "He who does what is more than ordinarily dangerous is bound to use more than ordinary care; that is to say, it will require greater care under those circumstances to amount in law to ordinary care, than it would if the undertaking were less hazardous."

Proximate cause.

Mr. Justice Agnew, in 70 Penn. St., 86, says: "Many cases *illustrate*, but none *define* what is a *proximate* and what a *remote* cause." A great array of cases state the rule satisfactorily to this court as follows: "It must appear in order to defeat the right of action, that but for the plaintiff's neg-

ligence operating as an efficient cause of the injury, in connection with the fault of the defendant, the injury would not have happened." 12 Bush., (Ky.) 41; 79 Ky., 160; 55 Texas, 88; 14 Allen, 429; 5 Colo., 197.

The appellee went between a standing and a moving car to 3. SAME. couple them. He saw that there was a link in a draw-head of each car. It was customary to couple with the link in the moving car. He tried to take the link from the standing car, but found it fast. The draw-head was one and a half or two inches lower than it should have been and twisted to one side. While the ordinary play of a link is from six to seven inches, he could not couple with this link without raising the link up with extra force. He then took the link out of the approaching car, seized the link in the standing car, tried to raise it up, his hand was caught and was injured. He knew that the draw-head was depressed; he knew that it was twisted to one side; he knew that the link was fast·and that it had no play; and he had in his possession the rules of the company, one of which forbade him to go between the cars to make a coupling, "*unless the draw-head and other coupling appliances are known to be in good order.*" He knew them to be in bad order, yet, because long familiarity with hazardous undertakings had blunted his apprehension of danger, he violated the rules and attempted to make the coupling. Upon his own testimony the court is of the opinion that appellee's negligence was gross, that it contributed directly to produce the injury, and that the court below erred in overruling the motion for a new trial on that ground.

2. The second ground of the motion alleges error of the court in refusing certain instructions prayed by the appellant; and the third ground relied on is error of the court in giving certain prayers of the appellee. They may be considered

together, and we deem it necessary to look only to the second instruction given for appellee, and instruction numbered 12 asked by appellant and refused. Both are set out in full above. The one given, in short, holds that the yard inspector was vice-principal and not a fellow-servant of appellee; while the one refused was based upon the theory that, under the law, the yard foreman and yard inspector were fellow-servants.

We are well aware that there is great conflict upon the question presented by the facts of this case. We know that one line of authority upholds the view of the honorable circuit judge, as also the contention of appellee here; while another sanctions the view of the law expressed in the rejected prayer of the appellant. The court has endeavored to arrive at such conclusions as will best conserve the great interests of those to whom masters and employers owe the duty of protection; as also the ancient principles and land-marks of the law which we should especially guard. As in most cases the chief difficulty lies not in the ascertainment of the law applicable to any one proposition; but in the blending of those principles applicable to the whole case.

4. MASTER AND SERVANT: Duty of railway company to employe: Negligence.

It is urged here that it was the duty of the defendant railway to furnish its employes safe appliances for performing the services intrusted to them, without subjecting them to unusual danger; and to exercise care and prudence in maintaining such instrumentalities in good repair. This is true, both in justice and upon authority. The railway company must have its repair shops to maintain its tools, rolling stock, etc., in good repair, and it must have its inspectors, not only at its termini, where a general overhauling of property is had, but at convenient stations along its line, to detect such injuries as may have been received *en route*. And should such company know-

ingly employ and retain persons incompetent for the performance of this high service, it would be liable to the person injured, though such person were the fellow-servant of the inspector. But "the master is not an insurer of the servant's safety. Nor does he guarantee that the tools, machinery and instrumentalities which he furnishes may not prove defective. He only undertakes to use reasonable care to prevent such results." *St. L., I. M. & S. Ry. v. Gaines*, 46 Ark., 555; *L. R. & Ft. S. Ry. v. Duffy*, 35 Ark., 602; *St. L., I. M. & S. Ry. v. Harper*, 44 Ark., 529.

The presumption is that the master has done his duty by furnishing suitable instrumentalities, and when this is overcome by positive proof that the appliances were defective, the plaintiff is met by a further presumption that the master had no notice of the defect, and was not negligently ignorant of it. 46 Ark., 555, and cases cited.

5. SAME: Burden of proof.

Turning to the case before us we find that John Carmichial was yard master at Texarkana. Under his control were two yard inspectors (each having an assistant) whose duties were one operating at night and the other during the day, to inspect all cars immediately upon arrival, to ascertain their fitness to continue their journey, to make trifling repairs, and, where serious damage was found, to mark the cars "B. O." Under the control of this same yard master were two yard foremen, one for night and one for day service, each having two assistants. The duties of these were to uncouple and couple cars, to take apart and make up trains in that yard, and take such cars as the inspector marked "B. O." to the repair tracks. At this yard the inspector determined the suitability of the cars for service, and the yard foreman put them together and made up the outgoing trains. The yard foreman and the yard inspec-

6. Negligence of fellow servant.

tor are not only employed and paid by the same corporation, but their separate services have an immediate and common object—the moving of trains. Neither works under the order or control of the other, and each takes the risk of the other's negligence. *St. L., I. M. & S. Ry. v. Gaines*, 46 Ark., 555; *Randall v. B. & O. Ry. Co.*, 109 U. S., 478.

While we recognize the liability of the railway company for the wilful or negligent default of its chief inspectors, and those deputed to supervise the condemnation of unsuitable tools, rolling stock, etc., we cannot assent to the proposition that every yard inspector on the line of a railroad is a vice-principal. Upon what we conceive to be the soundest principles, and the weight of authority we hold that the appellee and the yard inspector were fellow-servants, and hence that appellee had no cause of action against the appellant. *St. L., I. M. & S. R. R. v. Gaines*, 46 Ark., 555; *Smith v. Potter*, 2 A. & E. R. R. cases, 142; *R. R. v. Foster*, 11 A. & E. R. R. cases, 187; *Coons v. R. R.*, 5 N. Y., 492; *R. R. v. Fitzpatrick*, 17 A. & E. R. R. Cases, 578; *Whaalan v. R. R.*, 8 Ohio St., 257; *Mackin v. R. R.*, 135 Mass., 201; *T. & P. Ry. v. Harrington*, 62 Tex., 597; *Kirk v. R. R.*, 25 A. & E. R. R. Cases, 512; *Brown v. R. R.*, 6 . W. Rept., 485; *Gibson v. N. Y. Cent. Ry.*, 22 Hun., 292; *R. R. v. Hughes*, 49 Miss., 285; *R. R. v. Murphy*, 53 Ill., 337; *Robertson v. R. R.*, 78 Ind., 79; *Valtez v. R. R.*, 85 Ill., 502.

It follows, therefore, that the court below erred in giving plaintiff's second prayer and in refusing that numbered 12 asked by the defendant. Let the judgment be reversed and the cause remanded for further proceedings.