[No. 1752.]

GRIFFITH v. THE DENVER CONSOLIDATED TRAMWAY COMPANY.

1. PLEADING—EVIDENCE—CITY ORDINANCE—NEGLIGENCE.
When a cause of action is based upon the violation of a city ordinance, the ordinance and the facts constituting its violation must be pleaded, but the disregard of duties imposed by an ordinance may subject a railway company to the imputation of negligence, and in an action against a street railway company, for injuries caused by its negligent

conduct in the management and operation of its cars where the negligence relied on, consists in whole or in part, in the violation of an ordinance, the ordinance is admissible in evidence as any other fact without having been pleaded.

2. EVIDENCE — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — HARM-LESS ERROR.

In an action for damage for personal injuries to plaintiff alleged to have been caused by defendant's negligence, where the uncontradicted evidence shows that the injury was the result of plaintiff's contrib-utory negligence, so that a nonsuit upon that ground was correct, error committed in excluding evidence tending to prove defendant's negligence was harmless and immaterial.

3. CONTRIBUTORY NEGLIGENCE.

Where one went upon the track of a street railway in front of and in close proximity to a fast moving car, which she knew was approach-ing at a fast rate of speed, and so near to where she attempted to cross that she knew or should have known that in attempting to cross the track she was taking desperate chances, and was killed, her death was the direct result of her own contributory negligence and the railway company is not liable.

4. NEGLIGENCE—WHEN A QUESTION OF LAW.

Ordinarily the question of negligence is one of fact, and where the evidence is in any degree conflicting in any material particular, or if upon the facts and circumstances there is room for an honest dif-ference of opinion, the question must be submitted to the jury. But where the facts are not in dispute, and there can be but one opinion as to their effect, the question is one of law for the court to decide.

5. JUDICIAL NOTICE—COMMON KNOWLEDGE AND EXPERIENCE.

Whatever is matter of common knowledge and experience, the court is bound to recognize, and where in the light of common knowledge and experience an act is obviously imprudent, the law determines its effect and the court declares the law. And where a woman went upon the track of a street railway immediately in front of a rapidly approaching car with full knowledge of its approach, the court prop-erly held as a matter of law that her act was such contributory negligence as would bar a recovery for injuries sustained.

6. LIABILITY NOTWITHSTANDING NEGLIGENCE OF INJURED PERSON.

A street railway company may be held liable for injury to one upon its track, notwithstanding the contributory negligence of the injured person, but in order to apply this doctrine it must appear that the defendant had knowledge of the peril or dangerous position of the injured person in time to have avoided the injury. The rule does not apply where one suddenly went upon the track in front of a fast moving car, and so near the car that it could not be stopped, after the entrance upon the track, and before the collision, and the

fact that the motorman saw a woman running towards the track waving her handkerchief to stop the car, was not enough to charge him with anticipation that she would attempt to cross the track in front of the car, notwithstanding she was on the opposite side whence passengers usually boarded the car.

*Appeal from the District Court of Arapahoe County.*

Messrs. PATTERSON, RICHARDSON & HAWKINS, for appellant.

Mr. A. M. STEVENSON, for appellee.

THOMSON, J.

The appellant brought this action against the appellee to recover damages for the death of his wife, Amanda Griffith, caused, as it was alleged, by the negligence of the employees of the appellant in running and managing a train of cars upon its railroad track. The answer denied the charge of negligence, and averred that the injuries which caused the death of Mrs. Griffith were the consequence of her own fault and carelessness. The answer was denied by the replication. When the plaintiff rested, the defendant asked for a nonsuit. The motion was allowed and judgment entered accordingly. The plaintiff appealed.

Three persons witnessed the accident, and testified to the facts and the attendant circumstances. In all important particulars, their narratives agree, and the evidence as a whole presents us with a very clear idea of the situation. The accident occurred in the city of Denver on Curtis street, at its intersection with Twenty-eighth, on the 27th day of November, 1896. Curtis street and the streets crossing it vary from the cardinal points, but for the purpose of simplifying our statement, we shall regard Curtis street as running due east and west, and the cross streets due north and south. The cross streets are designated by numbers, the numbering being from west to east. The defendant occupied the street with

two tracks, as part of its railroad system. The tracks extended from the business center of the city outwards. According to a map before us, which was in evidence, and is part of the record, the street was about eighty feet in width, the tracks were in the center of the steeet and were about three and one half feet wide, and the distance between the tracks was about eight feet. Cars going out used the track on the south side of the street, and returning, that on the north side. It was the duty of the servant of the company in charge of a car or train, when signaled for the purpose, to stop at the further side of a cross street, to receive or discharge passengers. It was also his duty to be on the lookout for signals, and to see whether the track was clear. The plaintiff, with his family, lived on the southeast corner of Curtis and Twenty-eighth streets. On the day of the accident, Mrs. Griffith left her house to take the incoming car. She stopped on the sidewalk in front of her house, and at or near the corner, to wait for a car to come in sight. While waiting, she was engaged in conversation with Mrs. Philips, a neighbor, and a witness in the case. Finally, a train, consisting of a motor car and what is called a trailer, was observed approaching. When first seen, it had just crossed Twenty-ninth street. It was going at a very rapid rate of speed. The track upon which it was going was on the north side of Curtis street, and the place where it should stop was on the west side of Twenty-eighth. To reach the train, she must cross the track on the south side of the street, and to reach the place where it should stop, she must cross Twenty-eighth street. She borrowed a handkerchief from Mrs. Philips, and ran from the place where she was standing, diagonally across both streets, in the direction of the northwest corner of Curtis and Twenty-eighth streets, waving the handkerchief as she ran as a signal for the motorman to stop. Obliquely, her direction was that of the moving train. She crossed the first track, which was unobstructed, and attempted to cross the second, on which the train was approaching, and just as she stepped upon the track, the motor car ran upon her and killed

her. The place where she was struck was near the center of Twenty-eighth street,—perhaps a few feet beyond the center towards the west side of the same street. The regular stopping place was twenty-five or thirty feet farther on. The motion of the train had not been slackened, and no gong or bell had been sounded. Her stepping upon the track and the collision occurred at almost the same instant of time.

The plaintiff sought to prove that the train was going at an unusual rate of speed, but the court refused to receive the evidence. The plaintiff also offered an ordinance of the city of Denver, making it the duty of the tramway company to provide every car or train of cars with a gong or bell, and making it the duty of the motorman, when approaching any street crossing, to ring or sound the gong or bell within a distance not exceeding sixty feet from the crossing; and also at any point on the line, when the motorman should have reason to believe that there was danger of the cars colliding with any person, vehicle, animal or obstruction. The defendant objected to the introduction of the ordinance on the ground that it was not pleaded, and the objection was sustained. We can conceive of conditions under which the proposed evidence of unusual speed would be admissible. If a street railway company has a customary rate of motion for its trains, its patrons may, perhaps, act in reliance upon that rate, and damage may be sustained in consequence of its being suddenly and unexpectedly accelerated. And the reason given in support of the objection to the ordinance is not altogether sound. When a cause of action is based upon the violation of an ordinance, the ordinance and also the facts constituting its violation, must be pleaded. But disregard of duties imposed by an ordinance upon a railway company in the management and operation of its cars may subject it to the imputation of negligence; and the ordinance, supplemented by other proof, might be competent evidence in a suit against the company for injuries sustained, where the averment is that they were the result of the defendant's negligent conduct in the management and operation of its cars.

In such case, it would be no more necessary to plead the ordinance, than to plead any other evidence upon which the plaintiff might rely to prove the charge of negligence. It is not proper to plead evidence. It is the ultimate facts that should be stated, and all evidence of every kind which tends to support their averment is admissible. In actions like this, negligence is an ultimate fact; it is issuable, and it is for the evidence to show in what it consisted. If it consisted in whole, or in part, in the disregard of a duty enjoined by an ordinance, the ordinance is admissible in support of the statement alleging it; and the ordinance is upon the same footing with any other evidence which tends ·to sustain the charge. Bliss on Code Peading, §§ 206, 211; *Railway Co. v. McDonnell*, 43 Md. 534; *Wright v. Railroad Co.*, 4 Allen, 283.

But we do not think that if the ordinance had been introduced and the other evidence admitted, the result would or could have been different. Even if the rulings were erroneous, they were harmless. There was some evidence which tended to show that while the train was proceeding from Twenty-ninth to Twenty-eighth street, the motorman was engaged in conversation with a woman sitting in the motor car, and paying no attention to what was ahead of him. If the question of the defendant's negligence were the controlling question in the case, we think the evidence, which was admitted, was sufficient to put the defendant upon its proof, and the case should not have been taken from the jury. But, conceding everything that the plaintiff alleges respecting the negligence of the defendant, the catastrophe was the result of Mrs. Griffith's own voluntary act, done with full knowledge of the situation. Let us briefly review the facts. Standing upon the south side of the street, she saw the train approaching on the north side. She struck out in the direction of a corner on the other side, diagonally opposite to that on which she stood. It is clear that the train was proceeding very rapidly. Every one who saw it, noted the swiftness of its motion. She saw it, and in seeing it, saw what the others saw. There was nothing hid from her.

The train was in open view, and its speed plain. The loudest sound of a gong or bell, would have acquainted her with nothing she did not already know. She passed the first track, and when she reached the second, the train was so near that she must have known that in attempting to cross it she was taking desperate chances. The train had not reached the place where she could expect it to stop, and its speed was still undiminished. Yet she undertook to cross the track at a time and place when and where her act meant almost certain destruction. There was no compulsion upon her to do this; and, even for the purpose of boarding the car, there was no necessity for her action, for the evidence shows that upon its stopping at the regular place, she could have entered it as well from one side as the other.

There can be no recovery for an injury of which the imprudent or negligent conduct of the person injured is the proximate cause. The well established doctrine relating to contributory negligence is thus stated by the supreme court, in *Railroad Co. v. Holmes*, 5 Colo. 197. " * * * The proper question * * * is whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary and common care and caution, that but for such negligence or want of ordinary care and caution on his part the misfortune would not have happened. In the first case the plaintiff would be entitled to recover, in the latter not, as but for his own fault the misfortune would not have happened; mere negligence or want of ordinary care and caution would not, however, disentitle him to recover, unless it were such that, but for that negligence or want of ordinary care and caution, the misfortune could not have happened."

It was not in crossing the street that the negligence of Mrs. Griffith consisted. To reach the train, she was obliged to cross the portion between herself and the track on which it was traveling, and upon that portion there was nothing to occasion solicitude for her personal safety, but having reached

the track upon which the train was coming and upon which
she knew it was coming, at a place where it had the right of
way, and to which she knew or ought to have known it was
in dangerous proximity, if she was determined to place her-
self on the other side of. the track, the smallest degree of
forethought would have warned her to stop until the train
had passed, and had she exercised the caution demanded by
the most ordinary prudence, she would have been unhurt.
In the language we have quoted, but for her own fault, the
misfortune would not have happened.

Ordinarily, the question of negligence is to be determined
by the jury.   They are the judges of the credibility of wit-
nesses, and of the weight to which testimony is entitled, and
if the evidence, in any material particular, is in any degree
conflicting, or if, upon the facts and circumstances exhibited,
there is room for an honest difference of opinion, the ques-
tion must be submitted to them.   But where the facts are
not in dispute, and there can be but one opinion as to their
effect, the question is one of law, and it is proper for the
court to decide it.   Shearman & Redfield on Negligence,
§ 56; *R. R. Co. v. Holmes, supra; Behrens v. Railway Co.*,
5 Colo. 400; *Lord v. S. & R. Co.*, 12 Colo. 390; *Mau v. Morse*,
3 Colo. App. 359.   Whatever is matter of common knowl-
edge and experience, courts are bound to recognize, and
where in the light of such knowledge and experience, an act
is obviously imprudent, the law determines its effect, and
the court declares the law.   *Gaynor v. O. C. & N. R. Co.*,
100 Mass. 21.   If one suffers injury from throwing himself
knowingly and needlessly into the mouth of danger, he re-
ceives what he invites, and the law affords him no redress.
To step upon a railroad track immediately in front of a rap-
idly moving train, with knowledge of its approach, is an act
concerning the character of which there can be no disagree-
ment, and the responsibility for the consequences is upon the
doer.   Wharton on Negligence, § 333; *Butterfield v. For-
rester*, 11 East, 60.   The court properly held that, as a mat-
ter of law, the act of Mrs. Griffith was such contributory

negligence as would bar a recovery for the injuries she sustained.

But the plaintiff meets us with another doctrine which is equally well established ; this, namely, that there may be a recovery for an injury notwithstanding the contributory negligence of the person injured, if the defendant, with knowledge of the situation, by the exercise of reasonable care and prudence, might have prevented it; and seeks to make the principle applicable here. In order that the party inflicting the injury may be held responsible as against the negligence of the injured party, the latter must be in such position that he is exposed to the injury, and the former must be chargeable with knowledge of his position in time to render an avoidance of the injury feasible. Wharton on Negligence, § 333 ; *Rapid Transit Co. v. Dwyer*, 20 Colo. 132; *Coasting Co. v. Tolson*, 139 U. S. 558. If Mrs. Griffith had been upon the track, heedlessly oblivious of danger, or if there had been reason to suppose she was about to place herself in a position of peril, and the motorman, with time to stop his train, had wantonly run her down, the company could not escape liability. Her negligence, however gross, would count for nothing ; it would be no defense. But the case before us presents no such situation. When Mrs. Griffith first sought to attract the attention of the motorman, and during all the time she was crossing the street, until she reached the outermost track, she was in no danger; the car could not have hurt her. Nor could the motorman have anticipated that she would put herself in danger. To board the car it was unnecessary to cross that track, and it would occur to any onlooker that her purpose in running was that she might not miss the train, and that when it should stop she might be sufficiently near to board it without subjecting it to undue detention. By waving her handkerchief as a signal to stop, she notified the motorman that she saw the train and was fully aware of its approach. Her running in the same direction with the train was not an indication that she proposed to cross the track ahead of it, but the reverse ; if such had been her pur-

pose, the natural supposition is that she would have taken the shortest route directly across the street, and would not have pursued the longer oblique course, with the direction of the train, thus allowing it to overtake her. There was nothing in her actions to render it supposable that she would undertake to cross the track at that time and place. The motorman may have been guilty of gross negligence in running and managing his train, and he may have had no intention of responding to Mrs. Griffith's signal, and stopping at the proper place. By failing to stop, he might have subjected her to inconvenience, and possibly to damage of some kind; but, in her situation, his negligence involved no danger to her person. That she was struck by the car was due to her own rash and unnecessary act which there was nothing in her immediately previous conduct to suggest, and which could not, by the use of the ordinary faculties with which humanity is endowed, have been foreseen.

The facts which would warrant an application of the doctrine, invoked by counsel, of a liability for an injury notwithstanding the negligence of the person injured, did not exist. Mrs. Griffith was guilty of no negligence until she stepped upon the track, and then, avoidance of the collision was impossible. The most subtle reasoning leaves unobscured the controlling fact that Mrs. Griffith, with knowledge of the vicinity of the train, and with a knowledge which is common to high and low, ignorant and learned, that to go upon a railroad track immediately in front of a train in full motion is dangerous, nevertheless undertook the experiment. She was, therefore, herself responsible for the result.

In compliance with the request of counsel for the plaintiff, we have carefully examined each one of the numerous decisions to which they have referred us. For the most part, they are the productions of learned and able men, and our time has not been wasted. They state in varying language and apply to different facts, doctrines which were old when the opinions were written. Respecting the principles they enunciate, there is, so far as our observation extends, no con-

flict of authority. There is not one of them, and we do not believe there is one in existence, which, upon the facts here, would authorize a recovery. To review the cases *seriatim*, would be impracticable, as well as useless; but we shall notice two which counsel seem to regard as of special importance. These are the cases of *Railway Co. v. Rifcowitz*, 43 Atl. Rep. (Md.) 762, and *Oliver v. Tramway Co.*, 13 Colo. App. 543. In the first case, the appellee having in her hands some purchases she had just made, undertook to cross the tracks of the appellant at a street crossing. The tracks occupied almost the entire bed of the street on which they lay, the distance from the rail on which the car was approaching, to the curb of the sidewalk, being six feet. In the direction from which the car was coming, it could be seen in time to be avoided, but the appellee testified that she did not see it. When she stepped from the curbing to the street she was walking very slowly, and was seen by the motorman. He testified that as soon as he saw her, he tried in every way possible to stop his car, which was going at the rate of ten or eleven miles an hour, but he did not say that he rang his gong or called out to warn her. He also said that it required thirty feet to stop the car in the condition in which the train then was. The other witnesses testified that at the time of the accident, the car was going very fast. There was evidence that the gong was rung, and there was evidence that it was not. The appellant asked the following instruction: "That the plaintiff testified that she looked for a car upon Pratt street before attempting to cross, and immediately upon stepping upon the track she was struck, and the plaintiff's evidence also shows that there was nothing to prevent the car being seen. This evidence is not satisfactory and legally sufficient to enable the plaintiff to recover, and the verdict must be for the defendant." The court refused the instruction in that form, but gave it after having modified it by adding to it these words: "Unless the jury shall further find that after the motorman saw, or could reasonably have seen, the peril of the plaintiff, he failed to exercise ordinary care to avoid the

accident." The modifying of the instruction gave rise to the only question which was considered by the court. Before referring to the opinion, it may be well to note the difference between the relative situation of the parties in that case, and the relative situation of the parties in the case at bar. In that case, the appellee did not propose to become a passenger. She was returning home with some purchases she had made. Her act in stepping from the curb meant that she was about to cross the tracks, and the motorman so understood it. He saw that she was giving no attention to the car, and therefore had reason to believe that she was not aware of its approach, and it was his plain duty to warn her that it was coming, so that she might stop in time; and the evidence was not conclusive that he slackened in the least the speed of his car after he saw her. In the present case, Mrs. Griffith saw the car, and notified the motorman that she saw it. She therefore needed no warning that it was coming. Her act in stepping from the sidewalk upon the street, does not, of itself, as in the Maryland case, mean that she intended to cross the farther track, and the direction she took did not indicate that such was her purpose. Nothing she did was calculated to excite apprehension that she was about to endanger her person. The opinion of the court was that the instruction was properly modified; that the case was not so free from doubt as to justify the court in taking it from the jury; that there was evidence from which the jury might have found that the motorman could, by the exercise of care on his part, have prevented the consequence of the neglect or carelessness of the appellee; but at the same time, the court reaffirmed the doctrine, that where the facts are undisputed, and but one reasonable inference can be drawn from them, the question of negligence becomes one of law for the court. In the second case, an ordinance of the city of Denver was pleaded, which made it unlawful for street cars, or train of cars, coming from opposite directions, to pass each other on any intersecting street, and, in case of cars or trains approaching each other, requiring the one

fartherest from the intersecting street to come to a full stop at such point, and in such manner, as not to obstruct travel upon the intersecting street, and to so remain until the other car or train should have entirely passed. The plaintiff further alleged that on a certain night, when it was quite dark, he desired to take passage on a car running on the track fartherest from his own side of the street; that at the time this car was approaching, a car was coming from the opposite direction, on the track nearest the plaintiff; that the latter car was farther from the intersecting street than the other, but it sounded no gong and did not stop ; that the plaintiff misled by its failure to sound its gong, and relying on the stoppage of the car in obedience to the requirements of the ordinance, undertook to cross the street to board the car passing on the farther side; that the person in charge of the car which should have stopped, saw, or by the exercise of reasonable care could have seen, the perilous position of the plaintiff, and by the exercise of reasonable care could have avoided a collision with·him, but that, nevertheless, the car was suffered to continue its course, and to strike and injure him. A demurrer was sustained to the complaint, and this court reversed the ruling, and adjudged the complaint sufficient. The opinion was delivered by Bissell, P. J., and while the failure of the car to stop as required by the ordinance, was alluded to, the main ground of the decision was the allegation that the gripman saw or might have seen, the appellant as he was crossing the track, and by the exercise of ordinary care, might have prevented the injury, notwithstanding the negligence, if any there was, of the appellant. Why counsel regard that case as important, we do not know. The feature of the culpable conduct of the gripman after he knew or ought to have known that the appellant was in actual peril, sharply distinguishes it from the case now under consideration. And we might suggest still another distinction. The place where the appellant undertook to cross was in front of the place where the car should have stopped. If the ordinance had been observed, as the appellant had the

right to suppose it would be, he would have passed unharmed, because the car would have been brought to a halt before it reached the place where he was. But the place where Mrs. Griffith undertook to cross was a place where the car had the right of way, and a considerable distance short of the point where it was required to stop, or where she had any right to expect it to stop.

From what we have said it will be perceived that we do not look upon these cases as being in point.

The judgment will be affirmed.

*Affirmed.*