21  393
33  520,

# The Denver and Rio Grande Railroad Company v. Gustafson.

**1. Negligence—Master and Servant.**

When one who knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable as a master for the negligence of such servant when the act or failure constituting the negligence comes within the apparent scope of the employment, even though he has not employed or paid the servant.

**2. Practice.**

Whether or not it is negligence in one attempting to cross a railroad track to rely upon the signals of a flagman, without looking and listening for approaching trains, is a question of fact for the jury.

**3. Negligence.**

Following the orders of a flagman is an exercise of some care, but where, by looking or listening, the train could have been seen in time to avoid an accident, not to do so is negligence.

*Appeal from the District Court of Arapahoe County.*

This action was brought by the appellee in the district court to recover from the appellant damages alleged to have been sustained by him through its negligence. The jury returned a verdict for the plaintiff in the sum of three thousand dollars, upon which the court entered judgment. From this judgment the defendant appeals.

The accident occurred about five o'clock in the afternoon, in the city of Denver, where Sixth street (along which defendant's railroad is constructed) intersects Market street. From the Union depot on Seventeenth street to a point on its line about two blocks north of the crossing in question, the defendant's road runs in an easterly and westerly course; thence, by a sharp curve, to this crossing, in a substantially north and south direction. There were five or six tracks at this street crossing, the west one being owned and used by The Union Pacific Railroad Company, the others by the defendant.

A flagman had been stationed at this place for nearly ten years. He was employed and paid by the Union Pacific Company, and not by the defendant, but during all this time he had flagged trains for the defendant as well as for his employer, and, so far as the public could know, the flagman was serving both companies and protecting their property, as well as guarding travelers along the highway from injury at their hands.

The jury, in answer to special questions, found that the crossing was an unusually dangerous one, with which the plaintiff was familiar ; that the train was running at a speed of from fifteen to eighteen miles per hour; but the jury were unable from the evidence to answer as to whether or not the bell on the engine was rung in the vicinity of the accident. Box cars and a locomotive standing on the second, third or fourth track from the east line of Sixth street and immediately to the north of the north line of Market street would have obstructed plaintiff's view had he been looking in the direction from which the train came, but, had he looked, he could have seen the approaching train one hundred feet away after such obstructions were passed.

The plaintiff was driving two horses, drawing an ice wagon, which was covered with a hood, within which plaintiff was sitting. As he was approaching this crossing going west on Market street, a freight train from the south passed along one of the tracks and over this crossing and stopped just north of the north line of Market street, and it formed a part of the obstruction referred to by the jury in their special findings. Plaintiff stopped about ten or fifteen feet from the track farthest east till this freight train passed, and, as he says, waited till the flagman signaled him to go ahead. There is conflicting evidence as to the nature of the signal given, as there is upon most of the material questions in issue. Plaintiff himself testifies that after he stopped and waited for the signal to cross, he neither looked nor listened for approaching trains, but relied solely upon the flagman for a safe transit.

It is difficult, if not impossible, to determine how far the plaintiff could have seen to the north had he looked before starting to cross over, and it is uncertain what distance he was from the track on which the train was running just after he passed the obstruction, when he could have seen a train one hundred feet away had he looked in that direction. A number of witnesses in the vicinity, about one hundred feet distant from plaintiff, testified that as soon as the plaintiff started to cross the tracks they saw the approaching train, and, by calling to the plaintiff, endeavored to stop him before he reached the place of danger. The plaintiff heard the calls, and looked first to the left, then to the right, but before he could check his team the train from the north struck the horses and wagon and threw the plaintiff from the wagon, causing the injuries sued for.

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for appellant.

Messrs. WELLS, McNEAL & TAYLOR, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

There being a substantial conflict in the evidence, the verdict of the jury cannot be disturbed if they were properly instructed as to the law. Assuming, then, that the defendant was negligent, there are but two questions to be considered, which are seriously urged by the appellant for a reversal : *First*, that the defendant is not liable under the circumstances of this case for the negligence of the flagman ; *second*, if it is liable, the court erred in instructing the jury that the plaintiff might rely solely upon the flagman, and was not obliged to look or listen for approaching trains, and his failure to do so did not constitute contributory negligence on his part.

(1) Employment and payment of a person are not indispensable elements to charge one as a master for the negli-

gence of such one who renders him service. When one knowingly and without objection receives the benefits of labor, or holds out to the public one as engaged in his service, he is liable, as a master, for the negligence of such servant when the act or failure constituting the negligence comes within the apparent scope of the servant's employment, even though the person for whom the service is rendered has not employed or paid the servant. The facts of this case sufficiently show that the defendant knowingly availed itself of the services of the flagman for a long series of years, and held him out to the public as its servant.

(2) The care which a railroad company whose road crosses the public highway must exercise in running its trains at such a place depends generally upon the facts and circumstances of the particular case. The care increases as the danger does. A corresponding duty is upon a traveler who attempts to cross at such a place. His care is in proportion to the danger. *Railway Co. v. Crisman*, 19 Colo. 30.

In the case at bar, the plaintiff's team was standing, but before he started to cross the track he neither looked nor listened, but relied solely upon the flagman. We cannot say, as a matter of law, that the defendant in such a case may rely solely upon the flagman; neither can we say, as a question of law, that his failure to look or listen was not contributory negligence. It is a question of fact, to be determined by the jury, whether or not a plaintiff may rely solely upon the flagman, or whether he is excused from the exercise of any additional precaution on his part in these circumstances.

*Buchanan v. C. M. & St. Paul Ry. Co.*, 75 Iowa, 393, was a case where the cause of action was based upon the negligence of the flagman at a crossing. The trial court directed a verdict for the defendant on the ground of the contributory negligence of the plaintiff. This was held error, and the court, in discussing the point before us, says: "She [the driver] did stop, and was bidden to go on; and, while she would not have been justified in rushing into a place of

obvious danger, *yet it was for the jury to determine whether she was justifiable in relying on the signal to cross over."*

*Berry v. Penn. R. R. Co.,* 48 N. J. Law, 141, was an action for injuries received at a railroad crossing caused by the negligence of the railroad company in running its train at a high rate of speed. There was no flagman at the crossing, but the court, in discussing the case, uses this language : " It is true that negligence of a flagman will not excuse the traveler who attempts to cross the track of a railroad from looking both ways and listening. He must not rely entirely on the flagman." The remark was *obiter*, but we consider the reasoning good, and applicable to the case at bar.

The court gave to the jury instructions numbered three and four, which are as follows :

" Third : You are instructed that if you find from the evidence that the flagman signaled to the plaintiff to proceed across the track in a way that led him to understand and so that a reasonable person would have understood that the passage was safe for him, the plaintiff had a right to rely on the safety of the track, without looking or listening for an approaching train.

" Fourth : You are instructed that if you find from the evidence that the flagman was there and was seen by the plaintiff, then in order to find that the plaintiff was guilty of contributory negligence in this case, you must find that either the plaintiff drove upon the track after being properly warned not to do so, or that he actually saw the train approaching in time to have avoided the accident, by the exercise of reasonable care after seeing the train."

These instructions were evidently intended to define the duty of the plaintiff, and in the light of the foregoing principles should they be analyzed. The third instruction is wrong in that it declares that the plaintiff may omit all precautions for his own safety, excepting only to follow the signal of the flagman. It relieves the plaintiff from the duty to look or listen for approaching trains. As an abstract proposition of law, this is not sound ; neither is it harmless error

under the facts of this case.  The jury might well infer—as, in fact, they are expressly told—that the plaintiff might blindly obey the flagman without doing anything further, even though his position within the hood of the wagon might have interfered with his range of vision, and, in some measure, dulled his sense of hearing.

It is true that following the orders of a flagman is an exercise of some care, but it is for the jury to determine whether it is the whole duty of the plaintiff as the exercise of that reasonable care which is demanded under the circumstances of the case.

The fourth instruction in another form repeats the error in the third, and expressly omits the element of listening.  In effect, the jury are told that only two acts of the plaintiff will constitute contributory negligence that would bar a recovery : *First*, if he drove upon the track after he was warned not to do so ; *second*, that he actually saw the train approaching in time to have avoided the accident by the exercise of reasonable care after seeing the train.  That is to say, unless he actually saw the train in time thereafter to avoid the accident, he is not negligent, even though by looking he might have seen it, or by listening he might have heard its approach, in time to have avoided the accident.  No duty is therein imposed upon the plaintiff to look or listen for the train, and his negligent acts or omission are expressly confined to looking, and to that period of time after he actually saw the train.

This may not have been the full duty of plaintiff.  The jury should have been instructed, in effect, that if he did not see the train because of his failure to look for it, or did not hear the noise made by it because he did not listen, nevertheless he should be charged with negligence if, by looking or listening, he might have seen or heard it in time to have avoided the accident.  Neither should the jury have been limited to the time after plaintiff actually saw the train. There is testimony upon which reasonable men might honestly entertain different views as to the extent of the caution

which plaintiff should have exercised.   It would have been error for the court to nonsuit the plaintiff on the ground that his own evidence showed him guilty of negligence that contributed to the injury.   So, also, was it error for the court to charge the jury as a matter of law that the plaintiff was excused from doing anything for his own safety except to obey the signals of the flagman.

It is urged with much force that the judgment is excessive.   A careful examination of the evidence as to the injuries received indicates to our minds that the verdict is objectionable in this respect; but as the case must be reversed for other reasons, it is unnecessary to review the evidence, as upon a new trial other and different evidence may be produced, and it will not be assumed that another jury will err in this respect.

The judgment is reversed and the cause remanded.

*Reversed.*