[No. 6321.]

THE COLORADO & SOUTHERN RAILWAY COMPANY v. CHILES.

1.  Appeals—Presumptions—Where the jury are told in the charge of the court that they are to consider the instructions as a whole, and read them together, it must be assumed that they did so, e. g., where in an action for the death of plaintiff's child, attributed to the negligence of a railway company, three separate instructions explicitly declare that the negligence of the father, or the child, or the driver of the vehicle upon which the child was riding, must defeat the action, a subsequent instruction which fails to direct attention to contributory negligence on the part of the father, or the driver, will not be regarded as fatal error.—(197)

2. Railway Company—Highway Crossing—Negligence—To suddenly set in motion over a much frequented crossing of a public street, without signal or warning, a long train of freight cars which have been standing for from fifteen minutes to a half hour, with the caboose or rear car upon such crossing, but at such distance from the planked way as to afford ample opportunity for the passage of vehicles, is negligence as to the public.—(199)

3. Contributory Negligence—Of Traveler at Railway Crossing—The rule heretofore prescribed as to the care for his own safety, required of the traveler approaching a railway crossing, is not to be relaxed or modified; but what measure of caution is required of him depends upon the circumstances of the case. What may be due care in one case may be negligence in another.

Where a train of freight cars of great length had been standing for from fifteen minutes to a half hour with the rear car in a frequented street crossing, but far enough from the planked way to give ample room for the passage of vehicles, with no flagman or member of the train crew present, nor any other indication that the train was about to be set in motion, the situation was held to extend to the public an assurance that a crossing might safely be attempted; and that although the view towards the head of the train was obstructed, the traveler was not, as matter of law, guilty of contributory negligence in not stopping; that the question was properly left to the jury. —(200-202)

4. Appeals—Harmless Error—In an action for the death of plaintiff's child, attributed to the negligence of the defendant railway company in propelling a train of cars against the vehicle in which the child was riding, at a highway crossing, contributory negligence of the driver of the vehicle was urged as a defense. The court below received testimony that the driver was a most careful person. Held, that as this was to be assumed, without evidence, and the whole situation, and what the driver did, as well as what he omitted, was shown, the admission of the testimony was harmless.—(202-204)

5. New Trial—Misconduct of Counsel—Criticisms made by counsel upon the attitude and conduct of the opposite party, illustrated by quotations from noted writers, and enlarged upon in a flight of oratory, are no ground for a new trial, where such criticisms are based upon facts and circumstances appearing in the record.—(205)

*Appeal from Larimer District Court* — Hon. HARRY P. GAMBLE, Judge.

Mr. E. E. WHITTED for appellant.

Mr. WILLIAM H. TRINDLE and Messrs GARBUTT & CLAMMER for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

This appeal is from a judgment for $3,050 entered in favor of the plaintiff below, upon the verdict of a jury. Fifty dollars thereof was for furniture, and the balance for the death of plaintiff's son, who was injured at a railway crossing on Sixth street in Loveland. Several tracks ran north and south across the street. The first, on the east side, was called the house track, and the second, the main track. Over all the tracks, and along the middle line of Sixth street, there was a plank crossing wide enough to accommodate vehicles. Sixth street ran east and west and was a much used thoroughfare. A short time before the accident a freight train of ten cars pulled into the yard, from the north. It was cut for the purpose of leaving a car and gathering up others. Three cars with a caboose at the rear were left standing on the main track, and, according to the testimony of plaintiff's witnesses, the rear end of the caboose was on Sixth street, and from four to ten feet south of the plank crossing, and had been standing there for from fifteen minutes to half an hour before the accident. In the course of operations in the yard, seven other cars were kicked back toward the three cars. The conductor thought that these seven cars were coupled to the three cars; at least they did not remain separate far enough for him to tell, from where he was forward, that they were not coupled. The ten cars and caboose extended about four hundred feet south from Sixth street, and such was the situation at

the time the caboose was first seen by the plaintiff, as hereinafter stated. At the time of the accident, there were about twenty-eight cars in the train, and as each car was about 34 feet long, the engine must have been in the neighborhood of 1,000 feet south of Sixth street. Near the east track, just off Sixth street, a large water tank was standing. Approaching the crossing from the east on Sixth street, the view of the main track to the south was obstructed by houses and large trees, for a part of the way, then by the tank and by cars standing on a side track, so that the view down the main track to where the engine was located was more or less obstructed until a point was reached within a few feet of the main track. On the day of the accident, the plaintiff was moving his household goods from one part of Loveland to another. He had employed a man to haul the goods on a flat-topped dray. About noon they started, with a load of goods, south on Lincoln avenue toward Sixth street. The driver was sitting on a high seat at the front; a little daughter of the plaintiff was sitting on a table about the middle of the load; the deceased was standing on the dray at the rear and on the north side, and the plaintiff at the rear and on the south side. Attached to and behind the dray was a buggy in which sat the plaintiff's wife. They came into Sixth street, about two blocks east of the crossing, and turned west. As they turned the corner at Sixth street, the plaintiff saw the caboose standing as above stated. They drove slowly westward, looked and listened for trains, but did not stop. Just before driving upon the crossing, the plaintiff asked the driver about it, and was told that nothing was in sight. Plaintiff saw an engine standing on the main track about three blocks south and which appeared to him to be standing still. Just as the hind wheels pulled upon the main track, the caboose started to move. It came back against the dray. The son was

thrown to the ground, some of the furniture fell on top of him, and from the injuries thus sustained he died in about an hour. The trainmen were all on the west side of the train. The rear brakeman was about three car lengths south of the caboose. There was no flagman or brakeman at the rear of the caboose or at the crossing. No warning was given that a coupling was about to be made that might move the caboose, and, according to the testimony on the part of plaintiff, no bell was rung or whistle blown. At the time the horses pulled upon the main track, the engine and forward part of the train were moving slowly backward to make a coupling. The plaintiff describes the appearance of the engine to him as standing still, and though the forward part of the train was being slowly pushed backward, it cannot be said, when the length of the train, the short distance that separated the cars, the angle of vision of the occupants of the dray, and the slow motion of the cars coming back to make the coupling, are considered, that it did not present to the occupants of the dray the appearance of a long and continuous train standing still and headed south.

The first alleged error argued in the appellant's brief relates to the giving of instructions. In the first instruction, the court said that any negligence or carelessness of the driver of the vehicle was in law imputed to the plaintiff, and that if the jury believed from the evidence that the plaintiff himself, or the deceased, or the driver, or all or any of them failed to exercise ordinary care and prudence to avoid the collision, and that the lack of such care and caution on the part of the plaintiff, or the deceased, or the driver, contributed directly to the causing of the accident, then their verdict must be for the defendant, even though they believed from the evidence that the defendant was negligent. In Instruction No. 2, the jury were told, that before they could find a verdict

for the plaintiff, they must find from a preponderance of the evidence that the defendant was guilty of negligence that was the proximate cause of the accident, and that neither the plaintiff, the deceased, the driver, nor all or any of them, were guilty of any lack of reasonable care that contributed to the accident. In Instruction No. 3, after stating the duty of persons about to cross a railroad track, and the care to be observed, the jury were again told that if they believed from a preponderance of the evidence that the plaintiff, the deceased, or the driver were guilty of negligence or carelessness, in failing to exercise the duty imposed, the verdict must be for the defendant. In the course of Instruction No 6, the court said that if the jury believed from the evidence, that at the time the deceased drove upon said crossing he took precaution to ascertain the existence of danger, as a person ordinarily would under similar circumstances, and further that the defendant was guilty of negligence in backing the cars, then they should find for the plaintiff; and, in the course of Instruction No. 8, they were told that if the deceased came to his death by reason of injuries negligently inflicted by the defendant, and the deceased did not, by his own negligence, contribute to the accident, they should award the plaintiff such reasonable damages as would compensate him for the loss of his son. The defendant maintains that there is an irreconcilable conflict between Instructions Nos. 6 and 8 and the other instructions mentioned above; because, as is said in Instructions Nos. 1, 2 and 3, the negligence of the plaintiff, the driver, and the deceased was to be considered, and in Nos. 6 and 8 the negligence of the deceased only. It is to be observed that the alleged conflict is not one of directly opposite announcements of law, that cannot be reconciled by reading them together, or that cannot be read together. The announcements in Nos. 6 and 8 are in-

cluded in, and form a part of, Nos. 1, 2 and 3. In Instructions Nos. 1, 2 and 3, whether correctly or erroneously, and if erroneously the error would favor the defendant, the jury were plainly told, that if the plaintiff, or the driver, or the deceased, or all or any of them, failed to exercise the due care and caution which the instructions said were necessary on the part of each of them, the plaintiff could not recover. In Instruction No. 13, the jury were told that the instructions were to be taken and considered as a whole. The jury could not take and consider the instructions as a whole, and consider the question of contributory negligence of the deceased only. It must be taken that the jury obeyed Instruction No. 13, and took and considered the instructions as a whole, and read them together, and when they did this, of necessity they must have considered the question of the contributory negligence of each of the three. The instructions as a whole made recovery by the plaintiff dependent upon the absence of contributory negligence on the part of the plaintiff, the driver and the deceased, and if either were guilty of such negligence, the jury, under the instructions as a whole, could not return a verdict for the plaintiff without violating their oaths. After the jury were told with reiteration in three different instructions, that if the plaintiff, or the driver, or the deceased, or any or all of them, did not exercise that due care and caution which the instructions described as necessary on the part of each of them, and such lack of due care and caution on the part of either, or any, or all of them, contributed directly to the accident, their verdict must be for the defendant and against the plaintiff, and were further told that they must take and consider the instructions as a whole, it cannot in reason be said that ordinary intelligent men could have been misled by the alleged conflict, and it would

be straining at or toward unwarranted possibilities to hold that they might have been.

When plaintiff rested, the defendant moved that the jury be instructed to return a verdict for it, for the reason, among others, that it appeared from plaintiff's own testimony that as a matter of law there was such contributory negligence as to prevent a recovery—contributory negligence having been set up as a defense in the answer. An instruction was asked to require the return of a verdict for defendant, and the defendant is now here urging that the court committed error in denying these requests, and asks that it be held, as a matter of law, that there was such contributory negligence as will prevent a recovery by plaintiff. The defendant asks for the application of the doctrine that it is the duty of those about to go upon a railroad crossing to stop, look, and listen, for approaching trains, and that if they fail to do so, and in consequence are injured, they are, as a matter of law, guilty of such contributory negligence as will prevent a recovery. We do not wish to relax or modify, in the least, the rule in this respect as already announced and applied by this court in several cases. The safety of the public itself, as well as a proper operation of a railroad, requires that what has been said by this court be adhered to and applied under similar circumstances. In this case, as in all others of a like kind, it was the duty of the company to use due care and caution to prevent an injury to a traveler upon Sixth street, and it was equally the duty of the traveler to use due care and caution to prevent being injured by the company. Whether due care and caution has been employed, depends upon the circumstances of the case.—*D. & R. G. R. R. Co. v. Gustafson,* 21 Colo. 393 at 396; *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408 at 417.

If the injury complained of had been caused by

a train approaching from the north or the south, or if the entire train with the caboose at the end was being backed toward Sixth street before the dray was pulled on to the main track, the circumstances would have been more like those that existed in the cases wherein this court has held, that, as a matter of law, contributory negligence defeated a recovery. The situation presented here is so different, that the doctrine of those cases cannot be applied. This crossing was much in use. It was over one of the principal streets in the town. At the time of the accident, two other vehicles were approaching it from the west, and another was coming east a short distance behind the dray and buggy of the plaintiff. It is the duty of a railway company, in backing a train over such a crossing, to employ some reasonable means to warn travelers that the train is about to be backed over the crossing. Some authorities say that it is the duty of the company to have a brakeman on the rear end who can singal the engineer as well as the endangered traveler. Certain it is that some reasonable means looking to the protection of the traveler should be employed.—2 Thompson Negligence, secs. 1571, 1594; *Robinson v. W. P. R. R. Co.,* 48 Cal. 409; *C. C. C. & St. L. Ry. Co. v. Carey,* 33 Ind. App. 275; *Cooper v. L. S. & M. S. Ry. Co.* (Mich.), 33 N. W. 306.

In this case, according to the evidence on behalf of plaintiff, the caboose that had been standing for from fifteen minutes to half an hour in a public street at the end of a string of cars, far enough away from a plank crossing to afford ample opportunity for vehicles to pass over, was suddenly pushed backward against the dray without any warning or signal that it was about to be moved. It is obvious that such circumstances are sufficient to sustain a finding of negligence on the part of defendant.—*Smith v.*

*Pere Marquette R. Co.,* 136 Mich. 224; *Davis v. Mich. Cent. R. Co.,* 142 Mich. 382.

Notwithstanding the negligence of defendant, the plaintiff ought not recover if there was a failure to observe that reasonable care due from one approaching the crossing, and such failure contributed proximately to the injury. The measure of care to be employed by a traveler is described as "due care." —*C. & S. Ry. Co. v. Sonne,* 34 Colo. 206. The same thing is often expressed as "ordinary care," "reasonable care."—2 Thompson Negligence, sec 1609. In *Grand Trunk Ry. Co. v. Ives, supra,* it is said:

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, purdent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court."

The care to be exercised increases with the dan-

ger.—*D. & R. G. R. R. Co. v. Gustafson, supra.* The
measure, however, is always "due care" or "reason-
able care," and not the highest degree of care that
might be exercised. What may be due care in one
case may be lack of such care in another, or what
would be due care in one case might be the highest
degree of care in another. In the case of *D. & R. G.
R. R. Co. v. Gustafson, supra,* the traveler who had
stopped at a railway crossing while a train was pass-
ing, when it had passed, was signaled by a flagman
to come on. Without looking or listening, but relying
solely on the flagman, he started across with his
wagon and was struck by an approaching train. Had
he looked before driving on the track, he could have
seen the train, approaching one hundred feet away,
in time to have saved himself. Had it not been for
the circumstance of the signaling by the flagman, this
court might have held that there was such contribu-
tory negligence as would defeat a recovery. In view
of that circumstance, this court did not say, as a mat-
ter of law, that the defendant, in such a case, may or
may not rely solely on the flagman, nor did it say
that, as a matter of law, his failure to look or listen,
was or was not contributory negligence, but did say
the question was for the jury. In that case, the sig-
nal given by the flagman had a tendency to lull the
fears of the traveler and to impress upon him a sense
of security. In the present case, the situation sur-
rounding the crossing had a like tendency so far as
the caboose was concerned. The caboose was stand-
ing still, far enough away from the plank crossing for
travelers to conveniently pass at a place where it
would be placed for the very purpose of enabling
travelers to pass over. No trainman or flagman was
there, nor any other means employed to indicate to
the public that a change was about to take place.
The whole situation was one of assurance to the pub-
lic that the crossing could be safely used so far as the

caboose was concerned, the same as the signal of the flagman to come on was a like assurance in the Gustafson case. In the latter case, the traveler did not look or listen. Had he looked, he would have seen the approaching train in time to save himself, yet this court said the question was for the jury. Here the travelers looked and listened, but did not stop. There is no evidence that their stopping of itself would have revealed to them that the caboose was about to be moved backward, as there was evidence in the Gustafson case that, had the man looked he would have seen the train approaching. The situation was somewhat similar to cases where cars are left at a crossing, with a space between them inviting people to pass through, and, with reference to such cases, it is said in 3 Elliott on Railroads, sec. 1169:

"Although a railroad company may be guilty of negligence in suddenly moving cars without warning which it has left at a crossing, with a space between them inviting people to pass through, yet there can be no recovery for mere negligence in this respect if the injured party is guilty of contributory negligence. In such cases questions of negligence on the part of the company and that of contributory negligence on the part of the person injured are usually questions of fact for the jury to determine under all the circumstances."

Viewing the circumstances, as they existed at the crossing, in the light of the foregoing authorities, it cannot be said, as a matter of law, that there was that lack of due or reasonable care contributing proximately to the accident as will preclude a recovery by the plaintiff, and it follows that no error was committed against the defendant by submitting the question to the jury.

The driver of the dray had died after the accident and before the trial. In the course of the examination of one of plaintiff's witnesses, he testified

that he had known the driver for five or six years, and knew his character as a careful and prudent man. The witness was then asked what his character was in that respect, and, over the objections of defendant, was allowed to answer that the driver was a most careful and considerate man. Waiving the form of the objection as made, and assuming that it was properly made so as to call for the exclusion of the testimony, its admission could not be prejudicial under the circumstances. What the driver did was before the jury, substantially undisputed. He drove right on without stopping. The plaintiff asked him about the crossing, and the driver said it was all right, that there was nothing in sight, or something to that effect. Plaintiff testified that there was nothing in sight to excite apprehension. The situation as it existed and what the driver did was before the jury. This is admitted when the defendant argues that what was done was such contributory negligence, as a matter of law, as would preclude a recovery, and asks this court to so hold. Substantially, under the evidence, the question for the jury was, "Was what the driver did, the exercise of due care under the circumstances?" Even if the testimony objected to had not been admitted, the jury would have started with the presumption that the driver was ordinarily a careful man, and with that presumption would have determined whether what he did was the exercise of due care. The testimony admitted added nothing to the presumption that would exist without it, and, in considering the question with the facts before them, the jury would necessarily lay it out of their consideration the same as they would lay out the presumption had the evidence not been given. It is well known that a careful man may be careless at times and a careless man may be careful at times, and in judging whether an act is careful or careless, when

the act is before it, the mind thinks of the act itself and is controlled by the facts before it.

In most of the negligence cases cited by defendant, wherein the question of the admission of such evidence was discussed, the question arose upon the alleged error of the court in rejecting such testimony, and the different courts held that it was not error to reject it. In the case of *Morris v. The Town of East Haven,* 41 Conn. 252, cited by defendant, two persons were riding in a wagon, and while they were approaching a bridge the horse backed over an embankment where there was no railing and the occupants were drowned in the river. The only evidence admitted to prove the care exercised by the driver was the testimony of several witnesses who had seen him drive horses on other occasions, and who, upon their knowledge thus obtained, testified that he was a careful and prudent driver. What the driver did was not before the jury as in this case, and the court properly held that the admission of the testimony was reversible error. In the case of *Thompson v. Bowie,* 4 Wall. 465, also cited by defendant on an issue as to whether certain promissory notes dated on a particular day, were given for money lost at play, and therefore void, it was properly held reversible error to prove that the party giving them was intoxicated on the day of the date of the notes in suit, and that when intoxicated he had a propensity to gamble. There was no direct evidence that he did gamble, or what he did. If the question had been whether what he admittedly did was gambling, the fact that the man gambled when intoxicated would be properly excluded upon objection, but if admitted over objection, it could not reasonably be held prejudicial.

The last error argued in the brief of the defendant relates to what was said by the attorney for the plaintiff in his address to the jury. In the brief of the plaintiff, it is claimed that what was said was

responsive and related to an attitude taken by the attorney for the defendant at the trial. In his address, the plaintiff's attorney described a certain attitude of the defendant, which he drew from facts and circumstances occurring at the trial. The facts and circumstances he alluded to are in the record, and from these a certain conclusion was drawn as to the attitude of defendant. The attorney proceeded in a flight of oratory to enlarge upon the theme, illustrating his description of the alleged attitude of defendant by quotations from a certain noted man and from a great poet. The argument made seems to be based upon the record, and this court cannot define what conclusions shall be drawn from the record, nor suppress attempts at oratory in drawing such conclusions, nor can it be said that lawyers must not attempt to point their conclusions by quotations from the well known sayings of noted men or from the works of great poets. Counsel, in making addresses to the jury, should keep themselves within due bounds and within the record, and should be restrained from traveling beyond those limits; but courts should not smother the genius of some rising orator, nor lay an embargo upon the ancient art of oratory by undue limitations.

Upon a review of the whole record, prejudicial error has not been discovered, and the judgment is, therefore, affirmed.                    *Affirmed.*

Chief Justice Campbell and Mr. Justice Bailey concur.