# January Term, 1916.

[No. 8241.]

## HEADLEY ET AL. V. DENVER & RIO GRANDE RAILROAD COMPANY.

1. RAILWAY COMPANY—*Duty at Highway Crossing.* A railway company which permits an automatic bell, required by local ordinance, at a street crossing, to remain for a week out of repair, so that it fails to give the required signal of an approaching train, is guilty of negligence. (504, 505.)

So if it allows a train to be moved over the crossing at a speed in excess of that prescribed by ordinance. (505.)

In either case it is liable, if by reason of such neglect, as the proximate cause thereof, injury ensues to a traveler without fault on his part. (505.)

2. CONTRIBUTORY NEGLIGENCE—*Traveler at Highway Crossing of a Railroad.* The traveler who would pass over the tracks of a railway where they intersect the highway must listen, and look in both directions, before essaying to cross. Where there are several tracks he must maintain the same vigilance until all are passed. His diligence must cover the whole field of danger. (508, 509.)

If, to his knowledge, a train is approaching, he is bound to ascertain whether it will probably reach the crossing before he can pass; and he must take into consideration the fact that trains sometimes exceed the legal rate of speed, and that appliances for the warning of travelers, e. g., gates, or automatic bells, are liable to be out of order. Common prudence forbids reliance solely upon such appliances. (509.)

3. —— *A Rule of Law.* The duty so imposed upon the traveler, is, with us, a rule of law, and if the traveler fails therein it is the duty of the court to direct a verdict, save in those peculiar cases where the omission is excused. (510.)

4. —— *Conduct of Railway Company Excusing Negligence of the Traveler.* Where misconduct of the railway company is alleged to excuse negligence on the part of the traveler, the acts or omissions relied upon must be of such character as not only to show negligence, but to exhibit a condition of apparent safety, so as to actually mislead the traveler to his injury, e. g., as where the traveler is invited to pass by the flagman (*Denver Company v. Gustafson*, 21 Colo. 393), where the traveler is injured by an engine which approaches hidden from his view, by a train which precedes it (*Nichols v. Chicago, etc., Co.*, 44 Colo. 501). (510, 511.)

The evidence examined and the injured party held guilty of culpable negligence, not excused by any act or omission of the railway company.

5. —— *Where the Question is for the Jury.* Where, from the evidence presented, reasonable men of fair intelligence may draw different conclusions,

the question must be left to the jury; but if it is clear that only one inference can reasonably be drawn from the facts in view the question is one of law and for the court. (506.)

6.  MUNICIPAL ORDINANCE—*Construed.*  An ordinance required a signal bell to be maintained at a railway crossing, and prescribed that the bell should "begin to ring when the head end of any train moving toward the crossing" is at a prescribed distance therefrom. *Held* that the bell must continue to ring until the train has reached the crossing. (515.)

*Error to Denver District Court.*  Hon. CHARLES CAVENDER, Judge.

*On Rehearing.*

Mr. WILLIAM R. EATON, for plaintiffs in error.

Mr. E. N. CLARK, and Mr. R. G. LUCAS, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court.

The plaintiffs in error brought this action for damages resulting from the death of their son, who, it is alleged, was killed by reason of the negligence of the defendant in the operation of one of its railroad trains.  The defense pleaded was the contributory negligence of the deceased.  At the close of the plaintiffs' case the court instructed the jury to find for the defendant, and the correctness of this ruling is the sole question here involved.  The facts briefly stated are as follows:

Ellsworth avenue is a public highway 60 feet in width, extending east and west thru the southern portion of the City of Denver.  Across this Avenue at a point between South Inca street on the east and South Jason street on the west, the defendant operates four railroad tracks extending in a southeasterly and northwesterly direction.  The track farthest east is used for switching purposes only, which is also true of the one farthest west.  The other two are main lines of which the one farthest east is used for northbound trains, and the other for southbound trains.  The switch

to the west is known as the "coal track," and leads into the "Post coal yard" adjoining Ellsworth Avenue on the south, and about 20 feet west of the southbound main line. The Post coal yard is enclosed by a board fence 5⅓ feet in height, with a 3 inch space between the boards. The distance from this fence to the southbound main track is 16⅓ feet, and to the northbound main track 25⅓ feet. The ground is level, and the tracks straight, with an unobstructed view in each direction for at least three-fourths of a mile. Where the track enters the coal yard on Ellsworth Avenue is a gate 16 feet in width, which was open at the time of the occurrence in question. Four freight cars were standing upon the coal track just inside the coal yard. There was an automatic signal bell at the crossing which, under the terms of an ordinance of the City, was required to "begin to ring when the head end of any train traveling toward the crossing where such signal bell is located is at a distance of not less than 500 feet from such crossing." This bell was at the time, and had been for over a week, out of order and made no sound whatever. The ordinance also limited the maximum speed of trains at this point to 20 miles per hour. The deceased was a strong, intelligent young man, nineteen years of age; had been reared in the vicinity of the crossing and was perfectly familiar with surrounding conditions, having passed over the crossing daily for years. At about eight o'clock on the morning of December 20th he was fatally injured at this crossing by coming in contact with the engine of a local passenger train of defendant, known as "Uncle Sam," which was at the time ten minutes late, and traveling northward on the northbound line at a speed of from 35 to 40 miles per hour. When the train was within approximately 250 feet of the crossing the engine bell was ringing, and as the train approached the crossing, and up to the time of the collision, the whistle thereon was sounding. Deceased, on the morning of the fatal injury, was on his way to work, riding a bicycle, which was his custom. At a point about

250 feet west of the crossing where the collision occurred, he passed a friend afoot with whom he frequently lingered and talked, but did not do so at this time, only saying, in substance, that he would hurry along. He was next seen about 15 feet west of the coal yard track, and hence about 35 feet from the southbound main line and approximately 45 feet from the point of collision. He was then riding at a speed of about 4 or 5 miles per hour. At that moment an eight or ten car passenger train with two engines, known as Train No. 1, traveling south at the rate of 25 or 30 miles an hour, on the southbound main line track, came upon the crossing and immediately after it had passed over, the "Uncle Sam" train came upon the crossing. The trains were making considerable noise, and some smoke and steam which had escaped from Train No. 1 was blowing to the southwest in the direction of, and over, the Post coal yard, but in no sense interfered with seeing by the different witnesses,— except one who was standing on the west side of the southbound main line just east of the Post coal yard board fence, —the things which took place on the crossing. As "Uncle Sam" train approached, a witness was walking on the track in the same direction the train was moving, and when about 200 feet south of the crossing, stepped off to the east for that train to pass. At this time the bell of the engine pulling the "Uncle Sam" train was ringing and Train No. 1 was passing on the southbound track. This witness, as the engine of "Uncle Sam" train passed, looked ahead and across the pilot thereof and saw the wheel of a bicycle on the crossing, coming on the space between the southbound main line and the northbound main line, which at that point are 8⅓ feet apart. Another witness,—the one standing on the west side of the southbound main line just east of the Post coal yard board fence, approximately 230 feet south of the crossing, and whose vision was somewhat obscured by the smoke, etc.,—looked north to the crossing when the rear end of Train No. 1 rendered it possible, and saw the

deceased on his bicycle turning to keep from hitting the "Uncle Sam" train, and saw him fall. Another witness who was standing in the Post coal office looking thru a glass door in the direction of the crossing, a distance of approximately 45 feet, saw the collision. This witness testified that the whistle of the "Uncle Sam" engine was blowing, and that " 'Uncle Sam' hit the crossing just an instant later than No. 1 cleared the crossing;" that the latter had cleared the crossing between 20 and 40 feet; that when witness first saw the deceased he was sitting upright on his bicycle, riding toward the east with his hands on the handle bars, and it appeared to witness that the front wheel of the bicycle struck the side of the pilot, and the pilot beam, at the rear of the pilot, hit him. Another witness testified that he was at the scales in the coal yard, (which was about 50 feet from the point where the collision occurred and in plain view thereof) ; that he heard "Uncle Sam" coming in, and saw deceased rolling alongside the engine, and subsequently saw the track of the bicycle wheel where it had turned; that No. 1 was then, after witness had run to the body of deceased, from 125 to 150 feet south of the crossing. It is alleged in the complaint and admitted in the answer that "immediately" after Train No. 1 passed over the crossing the "Uncle Sam" train entered thereon and passed over the same.

The alleged acts of negligence set forth in the complaint are: the failure to sound the signal bell at the crossing as required by ordinance; propelling the train that caused the death of deceased at a greater rate of speed than permitted by ordinance; failure to cause the whistle or bell upon the locomotive of such train to be sounded or rung, or to give any other signal or warning of the approach of such train at any point within sight or hearing of the crossing.

That the automatic bell was out of order and failed to ring, and that "Uncle Sam" train was traveling at an excessive rate of speed were established by the evidence, and

also conceded by the defendant, and constituted negligence of the defendant sufficient to sustain a verdict. The proof of these, however, in no wise relieved the deceased from taking ordinary precaution for his own safety; and the undisputed evidence shows that he failed in this regard, and that such failure contributed to his death. He was, under the circumstances of this case, bound to look and listen before attempting to cross the railroad tracks in question. We have frequently held that exceeding the lawful speed limit, or the failure of a defendant railroad company to ring the bell or blow the whistle at the crossing, though required by law, will not render the company liable unless that be the proximate cause of the injury, and there be no such negligence by the plaintiff as will prevent recovery; and have often announced that one about to cross steam railroad tracks at a street intersection must exercise a proper degree of care to avoid injury. *Nichols v. C. B. & Q. R. R. Co.,* 44 Colo. 501, 519, 520, 98 Pac. 808; *C. R. I. & P. Ry. Co. v. Crisman,* 19 Colo. 30, 34 Pac. 286.

Indeed, it is elementary that if in a given case it appears that the defendant owed the plaintiff a duty to use due care, that he violated that duty, and that the plaintiff by reason thereof suffered an injury, the plaintiff, nevertheless, can not maintain his cause of action, if his own conduct was not that of a reasonably prudent and careful man, and such conduct contributed in some measure to bring about the injury sustained. *Colo. Cent. R. R. Co. v. Holmes,* 5 Colo. 197; *C. R. I. & P. Ry. Co. v. Crisman, supra; Westerkamp v. C. B. & Q.R.R. Co.,* 41 Colo. 290, 297, 92 Pac. 687; *Liutz v. Denver City Tram. Co.,* 43 Colo. 58, 95 Pac 600.

As the standard of duty in such cases is dependent upon the particular facts and circumstances of each, the question whether contributory negligence has been proven in a given case, is usually one for the jury. Nevertheless such question, in a particular case, may become one of law and thus

come within the province of the court, so that a particular verdict may and should be directed. Where the facts are such that reasonable men of fair intelligence may draw different conclusions the question of contributory negligence must be submitted to the jury, for the finding is then of fact. But if it is clear that only one reasonable inference can be drawn from the facts, and the course which prudence dictates be definitely discerned, the finding thereon is of law, not of fact, and it devolves upon the court to settle the matter. *Colo. Cent. R. R. Co. v. Holmes, supra; Colo. Cent R. R. Co. v. Martin,* 7 Colo. 592, 4 Pac 1118; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390, 21 Pac. 148; *Jackson v. Crilly,* 16 Colo. 103, 26 Pac. 331; *D. & R. G. R. R. Co. v. Ryan,* 17 Colo. 98, 103, 28 Pac. 79; *C., B. & Q. R. R. Co. v. McGraw,* 22 Colo. 363, 366, 45 Pac. 383; *D. & R. G. R. R. Co. v. Spencer,* 27 Colo. 313. 61 Pac. 606, 51 L. R. A. 121; *C. & S. Ry. Co. v. Sonne,* 34 Colo. 206, 211, 83 Pac. 383; *Nichols v. C., B. & Q. R. R. Co., supra.* The case at bar comes within the latter rule, and it was not error to so advise the jury, and direct a verdict accordingly. Under all the facts, the duty resting upon deceased was clearly discernible and fixed by law. *D. & R. G. R. R. Co. v. Ryan, supra; C., R. I. & P. Ry. Co. v. Crisman, supra; C. & S. Ry. Co. v. Thomas,* 33 Colo. 517, 81 Pac. 801, 70 L. R. A. 681, 3 Ann. Cas. 700; *C. & S. Ry. Co. v. Sonne, supra; Westerkamp v. C., B. & Q. R. R. Co., supra.*

In *Denver & Rio Grande R. R. Co. v. Ryan, supra,* after considering the duties and responsibilities imposed by law, upon railroad companies, we declared that the law was no less exacting in its requirements of individuals, and expressly approved an instruction therein given which charged the jury that "as a matter of law it is negligence and carelessness for a person to go, stand, or be upon the track of a railroad without keeping watch both ways for trains." In support of the rule we therein cited, *inter alia, Railroad v. Houston,* 95 U. S. 697, 702, 24 L. Ed. 542. Certain language

used in that case, and the law stated, are so applicable here
that we shall quote therefrom. The case involved the death
of a woman who was killed on a crossing of two parallel
tracks of the railroad company. When the engineer first
saw her she was on the track about four feet ahead of the
engine. No one witnessed the accident. No one saw her
from the time she left her house near-by until she was in-
jured which was about 6:30 p. m. Standing cars on the
other track might have obstructed her view. The court held
that the physical facts showed that she could not have looked
after passing the standing cars, and that she was guilty of
contributory negligence, as a matter of law. The language
of the court is as follows:

" * * * the failure of the engineer to sound the
whistle or ring the bell, if such were the fact, did not relieve
the deceased from the necessity of taking ordinary precau-
tions for her safety. Negligence of the company's employes
in these particulars was no excuse for negligence on her
part. She was bound to listen and to look, before attempt-
ing to cross the railroad track, in order to avoid an approach-
ing train, and not to walk carelessly into the place of pos-
sible danger. Had she used her senses, she could not have
failed both to hear and see the train which was coming. If
she omitted to use them, and walked thoughtlessly upon the
track, she was guilty of culpable negligence, and so far con-
tributed to her injuries as to deprive her of any right to
complain of others. If, using them, she saw the train com-
ing and yet undertook to cross the track, instead of waiting
for the train to pass, and was injured, the consequences of
her mistake and temerity cannot be cast upon the defendant.
No railroad company can be held for a failure of experi-
ments of that kind. If one chooses, in such a position, to
take risks, he must bear the possible consequences of failure.
Upon the facts disclosed by the undisputed evidence in the
case we cannot see any ground for a recovery by the plain-

tiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation. Under these circumstances, the court would not have erred had it instructed the jury, as requested, to render a verdict for the defendant."

Should we assume, as suggested in conference, that deceased may have stopped, listened and looked to the southward before Train No. 1 cut off his view, and may have seen the northbound train approaching, and concluded that he had time in which to cross over before such train, moving at the speed allowed by ordinance, reached the crossing, there is, nevertheless, no sensible explanation of his subsequent acts. He neither looked nor listened, or, if so, acted other than recklessly after reaching the space between the south and northbound main lines. While it may be true that he was not, as a matter of law, in duty bound to stop upon reaching such space, he was, nevertheless, required to look and listen, or act with reasonable prudence, before entering upon and attempting to cross the northbound main track. *D. & R. G. R. R. Co. v. Ryan, supra; Hinken v. I. C. Ry. Co.,* 97 Iowa, 603, 66 N. W. 882; *Weyl, et al. v. C. M. & St. P. Ry. Co.,* 40 Minn. 350, 42 N. W. 24.

Moreover, the duty resting upon deceased to look and listen before advancing upon this track was a legal obligation which he was bound to discharge, unless excused therefrom by some peculiar facts of the case. In other words, it is the imperative duty of one attempting to cross several tracks, not to cease his watchfulness upon crossing the first or second in safety, but to continue to exercise his senses, and be observant of the obvious conditions until the crossing has been accomplished, unless the railroad company, thru its acts, has produced a condition of apparent safety wherein reasonable men might have different views as to the necessity of looking and listening. Diligence, in order

to be effective, must cover the whole field of danger, and where it is inherent in a continuing state of things, the duty to exercise the care which the law imposes is a continuing obligation. Deceased knew that there were two main tracks, and if the suggested supposition be true, he also knew that a train was approaching the crossing on the northbound track, and was temporarily hidden from his view, and would so continue until he had reached the space between the main lines. Whatever might have been the speed of the northbound train when deceased's view thereof, if he saw that train at all, was cut off by the southbound train, the course which prudence dictated is clearly discernible. While there is some argument on the part of the defendant railroad company that the crossing was obscured by dust, smoke, and steam immediately after Train No. 1 passed, and that deceased was negligent, as a matter of law, in proceeding until that had cleared, we deem it unnecessary to consider the matter. We have read the entire record and agree with plaintiffs that there was no smoke or dust or steam on the crossing that in any wise interfered with the vision of deceased. Without notice of an approaching train on the northbound track, it was his duty, as a matter of law, upon reaching the space between the two main lines to look and listen, that is, "to keep watch" for an approaching train upon the track he was about to cross, unless surrounding conditions excused him therefrom; and with actual knowledge of an approaching train thereon he was bound to ascertain if it was likely to reach the crossing before he could safely pass over the same. One must assume, as within probabilities, that a train may sometimes run at greater than the legal rate, and when he is in a position to ascertain the fact for himself, is bound to do so, unless there is something in the conditions existing that excuse him in that respect. The northbound train went upon the crossing immediately after it was cleared by the southbound train,

and deceased was observed in the space between the main lines when the northbound train was within a very few feet of the place where the collision occured. He was then in no danger whatever, and in no situation of peril to interfere with the exercise of calm judgment. Nevertheless, he pushed forward to cross the track, making no effort to ascertain the proximity of danger or to avoid injury until the instant of the impact, when he was seen to swerve his bicycle as it struck the side of the pilot. It is self-evident that, unless excused by the silent signal bell, deceased was grossly negligent, for he neither looked nor listened with the care common prudence required, or, what is more probable, did not look or listen at all. In Illinois, (*C. & N. W. Ry. Co. v. Hansen,* 166 Ill. 263, 46 N. E. 1071) and in some other jurisdictions, it appears that the duty to look and listen is not enforced as a rule of law, but this court, in common with the overwhelming weight of authority, affirms the rule, and holds that if the duty is omitted, the trial court should instruct that a verdict be returned accordingly, except in cases of a peculiar nature where there are facts excusing the performance of the duty. Elliott on Railroads, (2d. ed.), Vol. 3, §1166; *Westerkamp v· C., B. & Q. R. R. Co., supra; C. & S. Ry. Co. v. Sonne, supra.*

And the facts excusing the performance of this duty must be of such a character as to show not only negligence of the railroad company, but also that its acts were such as to mislead the person injured when crossing its tracks. Elliott on Railroads, (2d ed.) Vol. 3, §1165. Thus in *D. & R. G. R. R. Co. v. Gustafson,* 21 Colo. 393, 41 Pac. 505, the negligence of the railroad company was supplemented by the express invitation and direction of the flagman to the traveler to proceed. So in *Nichols v. C., B. & Q. R. R. Co., supra,* the facts established not only the negligence of the defendant, but also that, by its affirmative acts, the plaintiff was misled. The defendant was in the act of moving one of its

trains from its main line, which led over the crossing where the injury occurred, to a siding, and had an engine, hidden from view, following this train. The distance from the siding to the crossing was several hundred feet, and a train moving at the speed allowed by law would not reach the crossing before the plaintiff attempted to pass over. Under these circumstances, plaintiff approached the crossing. He saw the train taking the siding which led away from the crossing, and thereupon walked along and near the track a very few feet, and attempted to cross it, when he was struck and injured by the engine which had been hidden from view in the rear of the train which he observed, the engine having traveled the distance at an excessive and unlawful rate of speed, without giving the required signals. *Colorado & Southern Ry. Co. v. Chiles*, 50 Colo. 191, 114 Pac. 661, is of a like character, and all the elements essential to bring it within the exception to the general rule are present, to-wit, the negligence of the defendant and its acts which misled the party injured. And while *Phillips v. Denver Tramway Company*, 53 Colo. 458, 128 Pac. 460, Ann. Cas. 1914 B. 29, did not involve the crossing of a steam railroad but a street railway, and a somewhat different rule applies, still the facts established negligence of the defendant, and also its acts which misled the plaintiff. The facts having the tendency to mislead were the propelling of its car, which plaintiff was following, across the street intersection at the time that the car which caused the injury was crossing the same intersection, thus producing an apparent condition of safety, but in which there was an invisible or hidden danger. In the case at bar the negligence of defendant was in no wise supplemented by an act on its part which would mislead the deceased. In other words, it did nothing to induce the deceased to attempt to cross the track, nor did it create any condition of apparent safety wherein there was a hidden or concealed danger. Its acts in the premises constituted neg-

ligence, but in no sense excused the deceased from the use of some care on his part to avoid injury. The rule here applicable is well stated in *Cadwallader v. L. N. A. & C. Ry. Co.*, 128 Ind. 518, 520, 27 N. E. 161, 162, where it is said:

"Assuming in this case that the appellant had the right to presume that no train was approaching, by reason of the failure of the flagman to give notice, yet this did not excuse her from the use of her senses of sight and hearing in order to ascertain the fact for herself. With the use of these senses she was as well able to ascertain whether a train was approaching as the flagman at the crossing, and a failure to use them was negligence. It has often been held by this court that negligence on the part of the railroad company does not excuse the injured party from the exercise of care on his part. *Bellefontaine R. W. Co. v. Hunter*, 33 Ind. 335; *St Louis, etc. R. W. Co. v. Mathias, supra; Cincinnati, etc., R. R. Co. v. Butler*, 103 Ind. 31; *Indiana, etc., R. W. Co. v. Green, supra; Indiana, etc., R. W. Co. v. Hammock, supra; Ohio, etc., R. W. Co. v. Hill, supra; Woodard v. New York, etc., R. R. Co.*, 106 N. Y. 369, 13 N. E. 424.

The failure of the flagman at the crossing to notify the appellant of the fact that a train was approaching was, at most, negligence, and did not excuse her from the use of some care on her part to avoid injury.

It is not found that the flagman did anything to induce the appellant to attempt to cross the track. The most that is claimed is that he did not notify her that a train was approaching. Had the flagman done anything to induce the appellant to attempt a crossing at the time she was hurt, or anything to throw her off her guard, then the question of negligence would have been a question for the jury."

And in Elliott on Railroads, (2d ed.) Vol. 3, §1165, the rule is stated as follows:

"In all cases where the right of recovery is based upon

negligence the rule supported by authority is, that, in order to recover, the plaintiff must himself exercise care, and is not absolved from this duty, no matter how clear the negligence of the defendant. Where, however, the acts and conduct of the defendant are such as may be justly regarded as willful, the general rule does not apply, nor, we may say in passing, does it fully apply where the defendant is negligent and the negligence is such as to mislead the plaintiff. But the plaintiff cannot be heard to say that he has been misled, unless he has used such care under the circumstances to ascertain the nature of the danger and guard against it, as a man of ordinary prudence would have exercised under similar conditions. It cannot be inferred from the mere fact that a defendant was guilty of negligence that the plaintiff was misled. The fact that there was negligence on the part of the defendant must be supplemented by evidence that there were such acts as would mislead a man of ordinary prudence or the plaintiff cannot successfully assert that he was misled by the defendant. As a railroad track is a warning of danger, one who attempts to cross it must act with care proportionate to the danger, and not suffer his attention to be diverted from the danger before him, and he must keep his faculties in active exercise."

The same rule is stated and applied in *White v. Chicago & N. W. Ry. Co.*, 102 Wis. 489, 78 N. W. 585, in which the facts were as follows: The gates maintained at a railroad crossing were open, and plaintiff, while walking across the tracks, was struck by a train running at an unlawful rate of speed, which he might have seen and heard if he had looked and listened before attempting to cross, and notwithstanding that he testified that he did look and listen, the court, nevertheless, held, as a matter of law, that he was guilty of contributory negligence. In considering the effect of the open gate as an invitation to cross in safety, the court, on pages 493, 494, 78 N. W. 587, said:

"In a written opinion denying the defendant's motion for a new trial, the trial judge laid much stress on the case of *Rohde v. C. & N. W. R. Co.*, 86 Wis. 309, wherein it was said: 'The open gate was an assurance to the public that there was no danger, and an invitation to cross in safety.' This was said in a case where the gates were not lowered, and plaintiff, relying thereon, drove his team in such proximity to the track that they became frightened by a passing train, and ran away. But suppose, while in a place of safety, plaintiff in that case had seen, or could have seen by the use of ordinary care, that the train was approaching, would any one claim that he might nevertheless continue his way and drive into danger? The paramount duty of the traveler is to use ordinary care, and this obligation is none the less absolute even though the other party is guilty of negligence. It is only when the traveler is lulled into security in reliance upon the negligent act, and is drawn into danger that he could not avoid by the exercise of ordinary care, that the obligation to respond in damages exists. The current of authorities in support of this rule is well-nigh universal. An extensive discussion and citation of authorities may be found in Elliott, R. R. § 1165, 1166. Thus, in *Moore v. K. & W. R. Co.*, 89 Iowa, 223, it is stated: 'A traveler upon a highway when approaching a railroad crossing, ought to make a vigilant use of his senses of sight and hearing in order to avoid a collision. This precaution is dictated by common prudence. He should listen for signals, and look in the different directions from which a train may come. If, by neglect of his duty, he suffers injury from a passing train, he cannot recover of the company, although it may itself be chargeable with negligence, or have failed to give the signals required by statute, or be running at the time at a speed exceeding the usual rate.' It was further said, in substance, that although deceased had the right to act on the presumption that the usual warning signals for

crossings would be given, yet he must use ordinary care to avoid danger; and, having had an opportunity to see the train and avoid the danger, no recovery could be had."

While there are cases that hold that a silent signal bell or an open gate may operate to excuse a traveller from looking and listening for an approaching train, and the question should be submitted to a jury under proper instructions, the weight of authority and best reasoned cases are to the contrary. It is a matter of common knowledge that electric bells or even gates are liable to be out of order, and common prudence would not permit one to rely solely thereon. Besides, in this case deceased must have known that the electric signal bell was not in order, from the fact that it was not ringing while the southbound train was passing, and deceased was within less than 45 feet of the crossing when that train came upon and passed over it. It is said, however, that as the ordinance does not expressly require the signal bell to continue to ring until the rear of the train has cleared the crossing, but only to "begin to ring when the head end of any train moving toward the crossing" is at a distance of not less than 500 feet from such crossing, we cannot say that deceased should have known that the bell was not in working order. The ordinance cannot be so construed; its spirit is otherwise. If the construction suggested could be placed thereon it would also follow that the ordinance had been complied with when the signal bell had commenced to ring at the distance of 500 feet from the crossing as the train approached, and immediately ceased ringing, long prior to the head end of the train reaching such crossing. This would be unreasonable, if not absurd, and equally so would be the construction suggested. While one who approaches a steam railroad crossing has the right to assume that the company will give the usual and required signals of approach, and when he can neither hear nor see any signs of a moving train, to also assume that the crossing may be made safely, he is not thereby relieved from the duty to use

his senses vigilantly to avoid danger. Elliott on Railroads, (2d ed.) Vol. 3, §1158. He can be excused in this respect only when the company has, by its acts, created a condition of apparent safety. In this case, that which the railroad company did and that which it failed to do in the premises, was nothing more than mere negligence. We are satisfied from a most careful consideration of this record that the facts are such that if the case were submitted to a jury and a verdict returned in favor of plaintiffs, we could not permit it to stand under the well recognized rules of law. The former opinion of this court is, therefore, withdrawn, and the judgment of the trial court affirmed.

Decision *en banc*.

Mr. JUSTICE HILL and Mr. JUSTICE TELLER dissent.

Mr. JUSTICE TELLER dissenting.

I cannot agree that the court below was justified in directing a verdict for defendant.

As I read the cases determined by this court in which that question was involved, they are directly in conflict with the majority opinion.

In the cases of *Denver and Rio Grande Railroad Co. v. Gustafson*, 21 Colo. 393, 41 Pac. 505, it appeared that plaintiff stopped some distance from a railroad crossing while a freight train was passing on one of the tracks, that after it passed a flagman stationed there signalled plaintiff to go ahead. Plaintiff testified that thereafter he neither looked nor listened for approaching trains, but relied solely upon the flagman. This court held that under those circumstances a nonsuit was improper, and said: "We cannot say, as a matter of law, that the defendant in such case may rely solely upon the flagman; neither can we say, as a question of law, that his failure to look or listen was not contributory negligence. It is a question of fact, to be determined by the jury whether or not a plaintiff may rely solely upon the flagman, or whether he is excused from the exercise

of any additional caution on his part under these circumstances."

This court there cited with approval an Iowa case which held that it was for the jury to determine whether the plaintiff was justified in relying upon the flagman's signal to cross over.

In *Phillips v. Denver Co.*, 53 Colo. 458, 128 Pac. 460, Ann. Cas. 1914B 29, it is said that, "this court has never held that a plaintiff was guilty of contributory negligence, as a matter of law, when some fact or element was present that tended to lull the plaintiff into a sense of safety, and caused him to perform or fail to perform the act or acts upon which the contributory negligence was sought to be predicated. On the contrary this court has held that in such a case the question was one for the jury."

Again, speaking of acts of a railroad company which create an appearance of safety, this court said:

"Such a condition does not relieve the traveler from the exercise of all care, but it is a factor to consider in determining whether or not he exercised that degree of care which, under the circumstances, he should have exercised." *Nichols v. C., B. & Q. R. R. Co.*, 44 Colo. 501, 98 Pac. 808.

In *Williams v. Sleepy Hollow M. Co.*, 37 Colo. 62, 86 Pac. 337, 7 L. R. A. (N. S.) 1170, we said:

"It is only in the clearest cases that the court should usurp the functions of the jury in determining questions of negligence or contributory negligence."

In the majority opinion, this court arrived at a conclusion that the deceased must have known that the signal bell was out of order and not ringing. To do this, the court indulges in inferences from the evidence, thereby usurping the functions of the jury. As to whether or not deceased must have known the condition of the bell, because of certain facts proved, is a question upon which intelligent persons may reach different conclusions. If the matter had been left to the jury, and they had found that he was ignor-

ant of the condition of the bell, as well they might, they might then have found that he was not guilty of negligence, under the ruling laid down in Phillips case, *supra,* because they might reasonably have found that the silence of the bell tended to lull deceased into a sense of safety. Under the *Gustafson* case it was clearly a question for the jury whether or not deceased was or might have been justified in relying upon the silence of the bell.

The prolonged discussion of the evidence in the majority opinion is sufficient of itself to show that there were matters in evidence from which the jury might have found for either party upon the question of contributory negligence.

The deceased cannot be held conclusively at fault "unless there is no sensible explanation to the contrary reasonably possible." *Stahl v. Railroad Co.,* 57 Mich. 239, 23 N. W. 795. Several things might have been regarded by the jury as sensible explanations.

In *Nichols v. C., B. & Q. R. R. Co., supra,* this court called attention to the fact that the plaintiff might have crossed the track in safety had the train been going at the rate allowed by ordinance.

So here, the jury might have found that the deceased was not negligent in crossing the track, when, after seeing the approaching train, there was time for him to do so, had not the train been running at double the speed allowed by the ordinance.

In a Michigan case the plaintiff's evidence tended to show that, after he was aware of the approach of the train, he had time in which to cross the tracks, had the train been running at its authorized speed, and that because it was running at double the proper speed, he was struck while on the track. A refusal to direct a verdict for defendant was sustained. *Railroad Co. v. Van Sleinburg,* 17 Mich 120.

The silence of the bell, while not justifying the deceased in a reckless disregard of his safety, was a matter to be

considered by the jury, as is directly held in *Tobias v. M. C. Ry. Co.*, 103 Mich. 330, 61 N. W. 614.

I think the rule laid down in the majority opinion is a radical departure from the well established law of this state, and contrary to the weight of authority in other jurisdictions.

I am authorized to state that Mr. Justice Hill concurs in these views.

Decided July 6, A. D. 1915.   Rehearing allowed November 1, A. D. 1915. Judgment affirmed February 7, A. D. 1916.